[No. B231787. Second Dist., Div. Seven. Jan. 24, 2012.]

ARI MARKEN, Plaintiff and Appellant, v.
SANTA MONICA-MALIBU UNIFIED SCHOOL DISTRICT, Defendant
and Respondent;
MICHAEL CHWE, Movant and Appellant.

**1254**

COUNSEL

Trygstad, Schwab & Trygstad, Richard J. Schwab, Lawrence B. Trygstad, Daniel J. Kolodziej and Lillian Kae for Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, James Baca, Elizabeth Zamora-Mejia and Heather A. Dozier for Defendant and Respondent.

Davis Wright Tremaine, Thomas R. Burke, Alonzo Wickers IV and Jeff Glasser for Movant and Appellant.

OPINION

**PERLUSS, P. J.**—After an investigation of a student's complaint Ari Marken, a mathematics teacher at Santa Monica High School, received a written reprimand from the Santa Monica-Malibu Unified School District (District) for violating the District's policy prohibiting the sexual harassment of students. Marken had been placed on administrative leave during the month-long investigation, but returned to his classroom following the reprimand.

Two years later Michael Chwe, a District parent, requested disclosure under the California Public Records Act (CPRA) (Gov. Code, § 6250 et seq.)[1] of records concerning the District's investigation of Marken and its findings he had violated the sexual harassment policy. Advised by the District it intended to release certain of the records (specifically, the investigation report and letter of reprimand), Marken filed a verified complaint for injunctive and declaratory relief/petition for writ of mandate, alleging disclosure of his personnel records was not authorized under the CPRA and would violate his constitutional and statutory rights of privacy. After initially issuing a temporary restraining order, the trial court denied Marken's request for a preliminary injunction. The court also denied Chwe's ex parte application to intervene in the action. We affirm the order denying the preliminary injunction and dismiss the appeal from the order denying leave to intervene.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Student Complaint, the District Investigation and the Letter of Reprimand*

In October 2008 the mother of a ninth grade student in one of Marken's classes at Santa Monica High School spoke with the student's house principal[2] expressing concern her daughter had been sexually harassed by Marken. The mother submitted a document outlining the alleged improper conduct (both comments and actions). The house principal spoke with the student and then with Marken, who admitted he had engaged in certain of the conduct alleged, explaining the context, and denied he had engaged in other conduct. The house principal then reported the complaint to the District, which retained an attorney to independently investigate the matter in accordance with the District's board policy 5145.7 on sexual harassment. Marken was placed on home assignment during the investigation, as required by the board policy.

The student's parents spoke with the investigator and provided information regarding the alleged misconduct but explained they had decided not to allow their daughter to be interviewed about the matter. In addition to the parents the investigator interviewed the house principal, the high school's dean of students, several staff members and Marken. The investigator prepared a report, dated November 25, 2008, which contained a summary of the evidence gathered and made "partial findings" regarding certain conduct that

---

[1] Statutory references are to the Government Code unless otherwise indicated.

[2] Santa Monica High School's approximately 3,000 students are divided into five smaller learning communities or "houses," each of which has its own leadership team including a house principal.

she concluded "more likely than not did occur." However, the report stated, because no interviews were conducted of any students, the investigation was not considered completed.

Based on the investigation report, on November 26, 2008 the District issued a "written reprimand following accusations of sexual harassment of a student," finding Marken had violated the District's board policy prohibiting the sexual harassment of students and his actions had negatively affected the student involved. The written reprimand included a number of specific directives relating to Marken's future conduct with students (including a prohibition of any further interaction with the student whose mother had initiated the complaint) and warned Marken a failure to comply with these directives or future incidents of sexual harassment or misconduct would result in further disciplinary action. Finally, the letter of reprimand stated a report of the matter had been made to law enforcement as required by District policy.[3]

Marken returned to his classroom. No criminal charges were ever filed.

### 2. Chwe's CPRA Request and the District Response

On December 14, 2010 Chwe, a professor of political science at UCLA (University of California at Los Angeles) and the father of two children who attend Santa Monica High School, made a CPRA request to the District, seeking "copies of all public records . . . concerning the investigation of Santa Monica High School teacher Mr. Ari Marken and the resulting decision to place him on leave in December 2008 for sexually harassing a thirteen-year-old girl, in violation of SMMUSD policy 5145.7." The request attached a copy of a letter dated December 4, 2008 from a District assistant superintendent to the mother of the student who had initiated the complaint against Marken, which stated, in part, "[T]he District hired an Independent Investigator to examine this complaint. The District found that Mr. Marken did violate Board Policy 5145.7 [on sexual harassment] and has taken appropriate action." The request also sought other public records regarding any substantial complaints about Marken's improper behavior toward students.

The District through its legal counsel notified Chwe it required additional time to respond to his request—first, a 14-day extension and then a one-month extension to February 7, 2011. Counsel explained the District had

---

[3] Although the investigation report and letter of reprimand remain sealed pending the determination of Marken's appeal, Marken has disclosed certain information from those documents in his complaint and the briefs filed in the trial court and on appeal.

advised Marken of Chwe's request and its intention to comply with it—that is, to produce all public records relating to its investigation of the October 2008 student complaint of sexual harassment and any other public records regarding substantial complaints about Marken's improper behavior toward students—and Marken's counsel had requested the one-month period prior to production of any documents to allow him to seek a judicial determination whether the documents the District intended to release were disclosable in light of Marken's federal and state constitutional privacy rights. Counsel assured Chwe it would produce those documents by February 7, 2011 "unless a court orders otherwise."

### 3. *Marken's Lawsuit; Chwe's CPRA Suit*

On February 8, 2011 Marken filed a lawsuit against the District, captioned "verified complaint for: temporary restraining order, preliminary and permanent injunction, declaratory relief; petition for writ of mandate." Marken alleged the District's decision to disclose the November 25, 2008 investigation report and the November 26, 2008 letter of reprimand in response to Chwe's request was not authorized under the CPRA because the sexual harassment complaint was neither substantial in nature nor well founded. Marken further alleged the District's intended disclosure of his confidential personnel records, unless enjoined, would violate his rights of privacy protected by the California Constitution and the Education and Government Codes and cause him irreparable harm. Concurrently with the filing of his complaint/petition for writ of mandate, Marken filed an ex parte application for a temporary restraining order and an application for an order to show cause regarding preliminary injunction, which were supported by a memorandum of points and authorities and related declarations.

Marken's lawsuit was initially assigned to the Honorable Ann I. Jones in department 86 (writs and receivers) of the Los Angeles Superior Court. Marken filed a Code of Civil Procedure section 170.6 affidavit of prejudice, and the case was reassigned to the Honorable Ruth Ann Kwan. When the court called the matter, counsel for Marken and the District stated their appearances. Chwe was also present and identified himself as the person who had filed the CPRA request. The father of the student involved in the complaint also identified himself to the court. Counsel for Marken and the District each noted that Chwe was not a party, and Marken's counsel requested the hearing be held in chambers. According to Chwe, he attempted to provide a written statement to the court; the clerk refused to accept it.

The court held an in camera hearing, on the record, so it could review the personnel records the District intended to disclose. Following argument, the court granted a temporary restraining order to preserve the status quo and set a hearing on the request for a preliminary injunction for March 10, 2011.

On February 23, 2011 Chwe filed a petition for writ of mandate to compel the District to comply with the CPRA, which was assigned to Judge Jones in department 86 of the Los Angeles Superior Court. Chwe also filed a notice of related case and requested his lawsuit and Marken's "reverse-Public Records Act lawsuit" be related and assigned to one of the writs-and-receivers judges in department 85 or 86 "who normally handle[s] Public Records Act writ petitions."

On March 2, 2011 the court (Judge Jones) denied the request to relate the two cases. Chwe did not seek review of that order in department 1, as permitted by rule 3.3(f)(3) of the Local Rules of the Los Angeles Superior Court. Instead, on March 3, 2010 his counsel gave telephone notice to counsel for Marken and the District of his intention to apply ex parte for leave to intervene in Marken's lawsuit against the District. Chwe's counsel provided notice to the court of his intention to file an ex parte application on March 4, 2011.

On March 7, 2011 Chwe, identifying himself as real party in interest, filed an ex parte application for leave to intervene in the Marken action in order to oppose the request for injunctive relief. The application explained ex parte relief was necessary because the hearing on the request for a preliminary injunction was scheduled for March 10, 2011 and Chwe's right to present arguments concerning his CPRA request would be violated if his request was not granted. The application was supported by a memorandum of points and authorities, which argued not only that Chwe qualifies as an intervener under Code of Civil Procedure section 387, subdivision (b), but also that he is an indispensable party to the action pursuant to Code of Civil Procedure section 389, subdivision (a), California's compulsory joinder statute.

### 4. The Trial Court's Rulings

#### a. The application for leave to intervene

On March 7, 2011 the court heard argument and denied Chwe's application for leave to intervene. The court explained it was denying the application because it had been presented on an ex parte basis, shortly before the scheduled hearing on the request for a preliminary injunction, notwithstanding the fact Chwe had been aware of the pendency of the action since February 8, 2011 when he was present at portions of the hearing on Marken's

application for a temporary restraining order: "Counsel, you are asking to intervene on an ex parte basis. The court is going to deny it on—the intervention on an ex parte because it's—your client did not exercise due diligence in trying to do this earlier so that it could be properly heard on the count's calendar so that they could file a proper opposition for the court's consideration."[4] Chwe sought immediate appellate review of that ruling by petition for writ of mandate and request for stay of proceedings, filed March 9, 2011. His petition was summarily denied by this court. On April 28, 2011 Chwe filed a notice of appeal from the order denying leave to intervene.

### b. *The application for a preliminary injunction*

On March 10, 2011, after receiving a supplemental memorandum from Marken in support of his request for a preliminary injunction, opposition papers from the District and a reply from Marken, and following argument of counsel, the court denied the request for a preliminary injunction, finding the documents at issue are subject to disclosure under the CPRA. However, the court ordered the District to redact the names and personal information of the complainant and witnesses identified in the documents and stayed the effectiveness of its order pending appellate review.[5]

In its tentative ruling, which it thereafter adopted as the final ruling, the court recognized that Marken has a legally protected privacy interest in his personnel files, including the investigation report and letter of reprimand. However, the court found "the potential harm to [Marken's] privacy interests from disclosure of the subject documents does not outweigh the public interest in disclosure. The public has a significant interest in the competence and misconduct of public school teachers teaching their children, especially allegations of misconduct that have a negative impact on their children. The public also has a significant interest in knowing how a school district responds to allegations of misconduct or improper behavior towards students by teachers." Applying the standards articulated in *American Federation of*

---

[4] The court also stated, "I'm not going to reward him by summarily granting the ex parte application without proper briefing for the court to properly consider these issues."

[5] When the court indicated it would stay its order if Marken sought appellate review, Marken's counsel said, "A judgment would have to be entered at this point in time. . . . So they'll prepare the judgment, then I will take that, that's what I would appeal from." The court responded, "Okay. So why don't you submit a stipulate[d] judgment. . . . That way I can sign it immediately." The parties then prepared a "stipulated judgment," which the court signed and filed on March 21, 2011. A corrected "stipulated judgment" was thereafter signed by the court and filed on March 23, 2011. In response to a written inquiry from this court prior to oral argument, counsel for Marken and the District acknowledged the "stipulated judgment" was not necessary to allow Marken to appeal from the March 10, 2011 order denying the preliminary injunction and was not intended to convert the ruling on the preliminary injunction into a final determination on the merits of the lawsuit.

*State etc. Employees v. Regents of University of California* (1978) 80 Cal.App.3d 913 [146 Cal.Rptr. 42] (*American Federation*), *Bakersfield City School Dist. v. Superior Court* (2004) 118 Cal.App.4th 1041 [13 Cal.Rptr.3d 517] (*Bakersfield School Dist.*) and *BRV, Inc. v. Superior Court* (2006) 143 Cal.App.4th 742 [49 Cal.Rptr.3d 519] (*BRV*), the court found reasonable cause exists to believe the complaint against Marken "is well-founded and substantial in nature." The court further found the public's interest would not be furthered by disclosing the identity of the complainant or the other witnesses named in the documents at issue and directed the District to redact their names and personal information.

Marken filed a timely notice of appeal from the order denying the application for a preliminary injunction. (Code Civ. Proc., § 904.1, subd. (a)(6); *Yu v. University of La Verne* (2011) 196 Cal.App.4th 779, 786, fn. 2 [126 Cal.Rptr.3d 763] ["[a]n order denying a motion for a preliminary injunction is appealable"].)[6]

## DISCUSSION

### *Marken's Appeal*

1. *Standard of Review*

 "As its name suggests, a *preliminary* injunction is an order that is sought by a plaintiff *prior to a full adjudication of the merits of its claim.* [Citation.] To obtain a preliminary injunction, a plaintiff ordinarily is required to present evidence of the irreparable injury or interim harm that it will suffer if an injunction is not issued pending an adjudication of the merits." (*White v. Davis* (2003) 30 Cal.4th 528, 554 [133 Cal.Rptr.2d 648, 68 P.3d 74].) "In deciding whether to issue a preliminary injunction, a trial court weighs two interrelated factors: the likelihood the moving party ultimately will prevail on the merits, and the relative interim harm to the parties from the issuance or nonissuance of the injunction." (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 999 [90 Cal.Rptr.2d 236, 987 P.2d 705].)

We generally review the trial court's ruling for abuse of discretion. (*Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1449–1450 [125 Cal.Rptr.2d 277].) An order denying an application for a preliminary injunction may be reversed only if the trial court abused its discretion with respect to *both* the question of success on the merits and the question of irreparable harm. (*Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286–287 [219

---

[6] Following Marken's appeal of the decision to deny the preliminary injunction, Chwe and the District stipulated to stay further proceedings in Chwe's separate CPRA lawsuit.

Cal.Rptr. 467, 707 P.2d 840].) However, if the "likelihood of prevailing on the merits" factor depends upon the construction of a statute or another question of law, rather than evidence to be introduced at trial, our review of that issue is independent or de novo. (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 408–409 [58 Cal.Rptr.3d 527]; *Vo v. City of Garden Grove* (2004) 115 Cal.App.4th 425, 433 [9 Cal.Rptr.3d 257].)

### 2. *The CPRA: An Overview*

The California Constitution guarantees both the individual's right of privacy (Cal. Const., art. I, § 1; see *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 15 [26 Cal.Rptr.2d 834, 865 P.2d 633]) and the public's "right of access to information concerning the public's business" (Cal. Const., art. I, § 3, subd. (b)(1)), including "the writings of public officials and agencies." (*Ibid.*; see *International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 329 [64 Cal.Rptr.3d 693, 165 P.3d 488] (*International Federation*)). With respect to the latter right, the Supreme Court has observed, "Openness in government is essential to the functioning of a democracy. 'Implicit in the democratic process is the notion that government should be accountable for its actions. In order to verify accountability, individuals must have access to government files. Such access permits checks against the arbitrary exercise of official power and secrecy in the political process.' " (*International Federation*, at pp. 328–329.)

In the CPRA the Legislature has sought to reconcile these two fundamental, but sometimes conflicting, conditional rights.[7] While "mindful of the right of individuals to privacy" (§ 6250), the Legislature has declared "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (*Ibid.*) Thus, the CPRA generally provides "every person has a right to inspect any public record . . ." (§ 6253, subd. (a)), "[e]xcept with respect to public records exempt from disclosure by express provisions of law . . . ." (§ 6253, subd. (b).) Section 6254, in turn, lists 29 categories of documents exempt from the requirement of public disclosure, many of which are designed to protect individual privacy, including, "Personnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy." (§ 6254, subd. (c); see also § 6254, subd. (k) [exempting "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state

---

[7] Initially enacted in 1968, the CPRA was modeled on the federal Freedom of Information Act (FOIA) (5 U.S.C. § 552 et seq.). (See *CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 651 [230 Cal.Rptr. 362, 725 P.2d 470].)

law"].)[8] Section 6255, subdivision (a), also permits a public agency to withhold other records if it can demonstrate "on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record."[9]

These statutory exemptions from mandatory disclosure under the CPRA must be narrowly construed. (Cal. Const., art. I, § 3, subd. (b)(2) ["[a] statute, court rule, or other authority, including those in effect on the effective date of this subdivision, shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access"]; see *Sonoma County Employees' Retirement Assn. v. Superior Court, supra,* 198 Cal.App.4th at p. 992.) Moreover, the exemptions from disclosure provided by section 6254 are permissive, not mandatory: They allow nondisclosure but do not prohibit disclosure. (*CBS, Inc. v. Block, supra,* 42 Cal.3d at p. 652; *Register Div. of Freedom Newspapers, Inc. v. County of Orange* (1984) 158 Cal.App.3d 893, 905 [205 Cal.Rptr. 92]; *Black Panther Party v. Kehoe* (1974) 42 Cal.App.3d 645, 656 [117 Cal.Rptr. 106]; see 68 Ops.Cal.Atty.Gen. 73 (1985).) Indeed, the penultimate sentence of section 6254 provides, "Nothing in this section prevents any agency from opening its records concerning the administration of the agency to public inspection, unless disclosure is otherwise prohibited by law." (See also § 6253, subd. (e) ["[e]xcept as otherwise prohibited by law, a state or local agency may adopt requirements for itself that allow for faster, more efficient, or greater access to records than prescribed by the minimum standards set forth in this chapter"].)

3. *Litigation Under the CPRA and the Propriety of a Reverse-CPRA Action*

 a. *Action by the person seeking disclosure pursuant to sections 6258 and 6259*

Public records must be open for inspection at all times during a public agency's business hours. (§ 6253, subd. (a).) A state or local agency, including, as here, a local school district (§ 6252, subd. (a)), generally has only 10 days to decide if copies of public records will be provided in response to a request that reasonably describes an identifiable record or records (§ 6253,

---

[8] Additional specific exceptions to disclosure are listed in sections 6253.2, 6253.5, 6253.6, 6254.1 to 6254.22, 6268 and 6276.02 to 6276.48. The initiative adopted by the voters in 2004 that added the right of access to public records to the California Constitution expressly preserves all these statutory exceptions. (Cal. Const., art. I, § 3, subd. (b)(5); *International Federation, supra,* 42 Cal.4th at p. 329, fn. 2.)

[9] Section 6255, subdivision (a), is frequently referred to as the "catchall exemption." (See, e.g., *International Federation, supra,* 42 Cal.4th at p. 329; *Sonoma County Employees' Retirement Assn. v. Superior Court* (2011) 198 Cal.App.4th 986, 991 [130 Cal.Rptr.3d 540].)

subds. (b), (c)). In unusual circumstances (for example, the records are held offsite or the request requires the collection of "a voluminous amount of separate and distinct records that are demanded in a single request") the agency may give itself an additional 14 days to respond. (*Id.*, subd. (c).) If the agency determines the requested records are not subject to disclosure, it must promptly notify the person making the request and explain the reason for its determination. (*Ibid.*)

If the person[10] requesting the records is not satisfied with the public agency's response, the requestor may seek a judicial determination of the agency's obligation to disclose the records requested. "Any person may institute proceedings for injunctive or declarative relief or writ of mandate in any court of competent jurisdiction to enforce his or her right to inspect or to receive a copy of any public record or class of public records under [the CPRA]." (§ 6258; see *Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 426 [121 Cal.Rptr.2d 844, 49 P.3d 194] (*Filarsky*).) "After a person commences such a proceeding, the court must set the times for responsive pleadings and for hearings 'with the object of securing a decision . . . at the earliest possible time.' (§ 6258.) If it appears from the plaintiff's verified petition that 'certain public records are being improperly withheld from a member of the public,' the court must order the individual withholding the records to disclose them or to show cause why he or she should not do so. (§ 6259, subd. (a).)" (*Filarsky*, at p. 426.) A member of the public who prevails in an action to compel disclosure of public records is entitled to recover reasonable attorney fees, as well as costs. (§ 6259, subd. (d).) An unsuccessful plaintiff, however, is subject to an award of costs and reasonable attorney fees to the public agency only if the case was "clearly frivolous." (*Ibid.*)

The order of the trial court directing disclosure or supporting the decision refusing disclosure "is not a final judgment or order within the meaning of Section 904.1 of the Code of Civil Procedure from which an appeal may be taken, but shall be immediately reviewable by petition to the appellate court for the issuance of an extraordinary writ." (§ 6259, subd. (c).) The Supreme Court has explained appellate review is limited to a petition for extraordinary writ to avoid delay and expedite resolution of the public agency's obligation to disclose the requested records. (*Filarsky, supra,* 28 Cal.4th at pp. 426–427.)

### b. *No declaratory relief action by the public agency holding the records*

In *Filarsky, supra,* 28 Cal.4th 419 the Supreme Court held a public agency may not initiate an action for declaratory relief to determine its own

---

[10] Section 6252, subdivision (c), defines "person" to include "any natural person, corporation, partnership, limited liability company, firm, or association."

obligation to disclose documents to a member of the public. Rather, an action by the person seeking disclosure pursuant to the procedures set forth in sections 6258 and 6259, summarized in the preceding paragraphs, is the exclusive method as between that person and the agency for litigating this issue: "Permitting a public agency to circumvent the established special statutory procedure by filing an ordinary declaratory relief action against a person who has not yet initiated litigation would eliminate statutory protections and incentives for members of the public in seeking disclosure of public records, require them to defend civil actions they otherwise might not have commenced, and discourage them from requesting records pursuant to the Act, thus frustrating the Legislature's purpose of furthering the fundamental right of every person in this state to have prompt access to information in the possession of public agencies." (*Filarsky, supra*, 28 Cal.4th at p. 423; see *id.* at p. 429 ["Members of the public could be discouraged from requesting records, because a simple request for disclosure and a denial by the public agency could require the individual to defend a civil action in which he or she would be liable for costs if the agency prevailed, and in which the individual would not recoup attorney fees if he or she succeeded. The initiation of an ordinary declaratory relief action also could delay disclosure of the documents for a lengthy period . . . ."].)

Filarsky, an attorney, sought disclosure of records relating to the City of Manhattan Beach's hiring of a police captain. The city initially denied Filarsky's request and then, in response to his letter indicating he would file a lawsuit under the CPRA if the city did not reconsider its decision, disclosed a small portion of the records requested and on the same day filed a complaint for declaratory relief pursuant to Code of Civil Procedure section 1060 to obtain " 'a judicial determination of its rights and duties under Government Code section 6250 et seq.' " (*Filarsky, supra*, 28 Cal.4th at p. 424.) Having determined the CPRA does not authorize a public agency to initiate an action to determine the agency's obligation to disclose public records, the court explained a trial court may properly refuse to grant declaratory relief "where an appropriate procedure has been provided by special statute and the court believes that more effective relief can and should be obtained through that procedure." (*Filarsky*, at p. 433.) Accordingly, the court held the trial court had abused its discretion by allowing the city to seek declaratory relief as to the propriety of its refusal to disclose the documents requested by Filarsky and should instead have sustained Filarsky's demurrer to the complaint. (*Id.* at pp. 434–435.)

### c. *A reverse-CPRA action by a person whose rights would be infringed by disclosure of the documents*

The Supreme Court in *Filarsky, supra*, 28 Cal.4th 419, explained that FOIA, the federal counterpart of the CPRA, like the California legislation,

expressly provides only for a cause of action to compel disclosure, not an action to prohibit disclosure. (*Filarsky*, at p. 431, citing *Chrysler Corp. v. Brown* (1979) 441 U.S. 281, 290–294 [60 L.Ed.2d 208, 99 S.Ct. 1705].) Nonetheless, the court observed that federal courts have allowed an action, "known as a 'reverse FOIA' case," by a third party seeking a judicial ruling precluding a public agency from disclosing documents, finding such actions to be authorized under the federal Administrative Procedure Act (APA), which authorizes judicial review of agency actions that adversely affect another person. (See *Filarsky*, at p. 431, citing 5 U.S.C. § 702 and *Campaign for Family Farms v. Glickman* (8th Cir. 2000) 200 F.3d 1180, 1184; see generally *Chrysler Corp*, at p. 318 [a party may seek judicial review under the APA of an agency's decision to disclose information when disclosure would be " 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' "].) The *Filarsky* court specifically declined to address whether a similar, reverse-CPRA action could proceed in California. (*Filarsky*, at p. 431 ["[w]e . . . have no occasion in the present case to determine whether a third party possesses the right to seek a judicial ruling precluding a public agency from disclosing documents pursuant to the CPRA"].)

In papers filed in the trial court and again on appeal, Chwe has raised the issue reserved in *Filarsky*, contending Marken has no right to file a reverse-CPRA action seeking a judicial ruling precluding the District from disclosing the documents Chwe has requested—an issue not addressed by Marken, the District or the trial court. If Chwe were right, of course, Marken would not be entitled to a preliminary injunction or to any other form of relief. Although this issue has not previously been resolved in a published appellate decision and is not free from doubt, we conclude Chwe is wrong.

> i. *No other remedy exists for an interested party to obtain judicial review of an agency's decision to improperly release confidential documents*

There are two fundamental differences between a reverse-CPRA lawsuit and the preemptive, agency-initiated declaratory relief action disapproved in *Filarsky, supra*, 28 Cal.4th 419. First, a reverse-CPRA lawsuit, like reverse-FOIA actions and an action to compel disclosure under the CPRA itself—and unlike the lawsuit filed by the City of Manhattan Beach considered in *Filarsky*—seeks judicial review of an agency decision under the CPRA. It does not ask the court to undertake the decisionmaking in the first instance. (See *City of Santa Rosa v. Press Democrat* (1986) 187 Cal.App.3d 1315, 1322 [232 Cal.Rptr. 445].)

As discussed, such an action to review an agency decision to disclose information under FOIA is authorized under federal law by the APA, specifically section 10(a) of the APA, which provides "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . , is entitled to judicial review thereof." (5 U.S.C. § 702; see *Chrysler Corp. v. Brown, supra,* 441 U.S. at p. 317; *Campaign for Family Farms v. Glickman, supra,* 200 F.3d at p. 1184 ["[a]lthough commonly known as reverse FOIA actions, cases like this one actually are brought under the APA . . ."].) This statutory authorization for judicial review of federal agency actions is not functionally different, at least in the context presented here, from the right of a beneficially interested party to seek a writ of mandate (traditional mandamus) pursuant to Code of Civil Procedure section 1085 to compel a state or local agency to comply with governing law: "Mandamus will lie to compel a public official to perform an official act required by law. [Citation.] Mandamus will not lie to control an exercise of discretion, i.e., to compel an official to exercise discretion in a particular manner. Mandamus may issue, however, to compel an official both to exercise his discretion (if he is required by law to do so) and to exercise it under a proper interpretation of the applicable law." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 442 [261 Cal.Rptr. 574, 777 P.2d 610]; see *V.S. v. Allenby* (2008) 169 Cal.App.4th 665, 670 [87 Cal.Rptr.3d 143] [" 'Code of Civil Procedure section 1085 authorizes a trial court to issue a writ of mandate "to compel the performance of an act which the law specifically enjoins . . . ." ' " " ' " '[T]here must be a clear, present, ministerial duty upon the part of the respondent and a correlative clear, present, and beneficial right in the petitioner to the performance of that duty.' " " ' "].)[11] Thus, mandamus should be available to prevent a public agency from acting in an unlawful manner by releasing information the disclosure of which is prohibited by law. (See *County of Del Norte v. City of Crescent City* (1999) 71 Cal.App.4th 965, 973 [84 Cal.Rptr.2d 179] ["A permanent injunction is an equitable remedy, not a cause of action . . . . The remedy is available in a mandamus proceeding and is appropriate to restrain action which, if carried out, would be unlawful." (citation omitted)].)[12]

---

[11] That the duty to be compelled is to refrain from taking a particular action (that is, not to disclose certain documents) rather than to perform an act does not preclude proceeding by way of mandamus. (See *Syngenta Crop Protection, Inc. v. Helliker* (2006) 138 Cal.App.4th 1135, 1180–1181 [42 Cal.Rptr.3d 191] [trial court erred in sustaining demurrer to count for writ of mandate directing Department of Pesticide Regulation to refrain from renewing registrations issued in violation of Food & Agr. Code].)

[12] As discussed, the exemptions from disclosure provided by section 6254 are permissive, not mandatory. However, public agencies have no discretion to disclose certain categories of documents, for example, personnel records of peace officers as defined by Penal Code sections 832.7 and 832.8. (See § 6254, subd. (k); *Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 289 [64 Cal.Rptr.3d 661, 165 P.3d 462].) Similarly, under Education Code section 49076 a school district may not grant any person access to

■ Second, and equally important, although the CPRA provides a specific statutory procedure for the resolution of disputes between the party seeking disclosure and the public agency, no comparable procedure exists for an interested third party to obtain a judicial ruling precluding a public agency from improperly disclosing confidential documents. If the public agency elects to disclose records in response to a CPRA request, absent an independent action for declaratory relief or traditional mandamus, no judicial forum will exist in which a party adversely affected by the disclosure can challenge the lawfulness of the agency's action.[13] In contrast to the situation in *Filarsky, supra,* 28 Cal.4th at page 433, where the court cautioned "the superior court would abuse its discretion if it permitted the plaintiff, by initiating an ordinary declaratory relief action, to circumvent the particular procedures and other provisions specified by the Legislature in the statutory scheme that was intended to govern such disputes," in the case of a third party seeking to challenge an agency's decision to disclose documents, the Legislature has not specified any special procedures to resolve the issue. A petition for writ of mandate is the appropriate procedure to present the issue to the court. (Cf. *County of Santa Clara v. Superior Court* (2009) 171 Cal.App.4th 119, 130 [89 Cal.Rptr.3d 520] [nothing in *Filarsky* precludes a taxpayers' action under Code Civ. Proc., § 526a seeking declaratory and injunctive relief based on governmental entities' allegedly illegal policies and practices with regard to requests for public records under the CPRA].)

ii. *Permitting a reverse-CPRA action will not impair the important procedural protections available to a party requesting information under the CPRA*

The *Filarsky* court identified several important incentives and procedural protections for a party requesting documents under the CPRA, primarily relating to cost and delay, that would be undermined by allowing the public agency in possession of the records to initiate a declaratory relief action to

---

"pupil records" without written parental consent or judicial order except under certain express, limited circumstances. (See *BRV, supra,* 143 Cal.App.4th at p. 751.) Whether an anticipated agency disclosure of confidential information is "otherwise prohibited by law" relates to the merits of the mandamus proceeding, not the petitioner's right to bring it.

[13] The reverse-CPRA action is necessary only when the public agency agrees to provide the requested records without judicial intervention. If the agency initially refuses to disclose information sought by the CPRA request and the requesting party seeks a writ of mandate in the superior court to compel disclosure pursuant to section 6258, a person potentially affected by the disclosure is entitled to intervene in the proceeding as a real party in interest. (See *International Federation, supra,* 42 Cal.4th at p. 328; *STI Outdoor v. Superior Court* (2001) 91 Cal.App.4th 334, 336 [109 Cal.Rptr.2d 865].) If the superior court grants the petition and orders disclosure, the affected party may thereafter seek further review by petition for writ of mandate in the Court of Appeal even if the agency elects not to contest the disclosure order—in effect, a "reverse-CPRA action" in the appellate court. (See, e.g., *International Federation,* at p. 328.)

determine its obligations under the CPRA. None should be significantly impaired by allowing a reverse-CPRA lawsuit.

First, the court posited parties requesting access to documents might not wish to contest the public agency's decision and should not be required to defend lawsuits they otherwise might not initiate. (*Filarsky, supra*, 28 Cal.4th at p. 432.) As discussed below, the requesting party should be named as a real party in interest and, if not, allowed to intervene in a reverse-CPRA lawsuit if he or she wishes; but any active participation in the litigation would in no way be mandatory. Because a reverse-CPRA action will only be filed when the public agency has decided to provide access to the requested records (see fn. 12, *ante*), the requesting party may elect to allow the agency itself to defend its decision. Similarly, although a requesting party who participates in a reverse-CPRA lawsuit would not be entitled to the recovery of attorney fees, as would be the case if the party had successfully litigated his or her right to access to documents against a public agency (§ 6259, subd. (d)), no fees will be incurred if the party relies on the agency to oppose the effort to bar access to the records.

The issue of potential delay is not as clear. The CPRA contains expedited procedures for determination by the superior court of the agency's obligation to disclose public records, as well as for appellate review by writ of mandate of that decision. A court would be under no statutory obligation to schedule briefing and hearings to expedite a final decision in a reverse-CPRA action. Nonetheless, if the agency has, in fact, decided to release the records requested, disclosure will proceed in accordance with the timetable set forth in section 6253 unless immediately enjoined by the superior court.[14] Briefing and hearings when temporary injunctive relief has been granted will proceed on an accelerated schedule. (See Code Civ. Proc., § 527.) Ultimately, however, any additional delay that may result from permitting a reverse-CPRA action is outweighed by the statutory right of an interested party to ensure that public agencies do not disclose records whose confidentiality is mandated by law.

---

[14] In this case the District notified Chwe within the statutorily mandated 24-day period it intended to produce the requested records but also said it would delay providing any copies for an additional month to permit Marken's counsel to file his lawsuit. We have serious questions whether that delay was authorized under the CPRA (see § 6253, subd. (b) [copies to be provided "promptly" upon payment of fees covering direct cost of duplication or statutory fee, if applicable].)

### iii. *Absent unusual circumstances, the person requesting record disclosure should be allowed to participate in a reverse-CPRA action*

Chwe advances two additional arguments in support of his contention Marken has no right to file this reverse-CPRA action. First, he contends allowing such an action between the subject of the documents, as plaintiff/petitioner, and the public agency, as defendant/respondent, deprives him, as the requestor, and the public of their right to enforce the CPRA's disclosure requirements. Second, he asserts permitting the District and Marken to cooperate in the filing of the reverse-CPRA lawsuit "facilitate[s] an end run of the California Supreme Court's decision in *Filarsky*."

■ Chwe's legitimate concern about protecting the rights of the party requesting document disclosure is properly addressed through the procedures specified in Code of Civil Procedure sections 389, subdivision (a) (compulsory joinder as party),[15] and 387, subdivision (b) (mandatory intervention).[16] Both sections recognize the right of someone who claims an interest in an action to participate in the case if its resolution may as a practical matter impair or impede the person's ability to protect that interest. (See *Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540, 556 [30 Cal.Rptr.3d 303] ["[t]he description of an indispensable party under the compulsory joinder statute is virtually identical to the description of a party who may intervene as of right"].) Compulsory joinder, however, does not require a showing the absent party's interests would not be adequately represented by the existing parties. (*Id.* at p. 557.)

■ A successful reverse-CPRA lawsuit seeking to prevent a public agency from releasing information on the ground the requested disclosure is prohibited by law will necessarily affect the rights of the party requesting the information—a party whose interest in access to public records is recognized by California Constitution, article I, section 3, subdivision (b)(1), as well as the CPRA, and protected by specific provisions of the CPRA authorizing

---

[15] Code of Civil Procedure section 389, subdivision (a), provides, "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if . . . (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest . . . . If he has not been so joined, the court shall order that he be made a party."

[16] Code of Civil Procedure section 387, subdivision (b), provides, "[I]f the person seeking intervention claims an interest relating to the property or transaction which is the subject of the action and that person is so situated that the disposition of the action may as a practical matter impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by existing parties, the court shall, upon timely application, permit that person to intervene."

litigation to compel disclosure. (See *Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 808 [135 Cal.Rptr.2d 1, 69 P.3d 927] [" '[a] person is an indispensable party [only] when the judgment to be rendered necessarily must affect his rights' "].) The requestor plainly has a stake in the outcome of the reverse-CPRA proceedings, and his or her interests generally should be represented, if not by joinder as a real party in interest, then at least upon motion to be allowed to intervene in the action. (See, e.g., *Lindelli v. Town of Anselmo* (2006) 139 Cal.App.4th 1499, 1504 [43 Cal.Rptr.3d 707] ["A third party may intervene (1) where the proposed intervener has a direct interest, (2) intervention will not enlarge the issues in the litigation, and (3) the reasons for the intervention outweigh any opposition by the present parties. [Citation.] 'The purpose of allowing intervention is to promote fairness by involving all parties potentially affected by a judgment.' "].) Indeed, permitting intervention by the requestor in a reverse-CPRA action is simply the corollary of the recognized practice of permitting a sufficiently interested party opposed to disclosure to participate in a lawsuit under the CPRA to compel the release of public records. (See, e.g., *International Federation, supra,* 42 Cal.4th at p. 328 [noting the superior court had granted leave to intervene to two employee unions opposed to disclosure to newspapers of the names and salaries of public employees earning $100,000 or more per year]; *STI Outdoor v. Superior Court, supra,* 91 Cal.App.4th at p. 336 [outdoor advertising company permitted to intervene in CPRA suit filed by competitor seeking disclosure of documents related to successful bid for contract with L.A. County Metropolitan Transportation Authority]; *Freedom Newspapers, Inc. v. Superior Court* (1986) 186 Cal.App.3d 1102, 1105–1107 [231 Cal.Rptr. 189] [defendant and his court-appointed criminal defense counsel actively participated in CPRA action by newspaper seeking disclosure from county regarding court-ordered payments to the defendant's lawyers and investigators].)[17]

▇ Chwe's remaining argument, beside being predicated on an unsupported assumption the District has acted in bad faith—that it did not genuinely intend to disclose the requested documents—misapprehends the limited nature of a reverse-CPRA action. As explained, the exemptions in the CPRA protect only against required disclosure, not permissive disclosure. The interested party seeking to enjoin an agency's disclosure by a reverse-CPRA action must establish that such a disclosure "is otherwise prohibited by law." (§ 6254, 2d to last par.) The City of Manhattan Beach in *Filarsky*, in contrast, was seeking a judicial determination of the scope of its discretion to withhold documents. As we said at the outset of this part of our opinion,

---

[17] Whether to require joinder or permit intervention in a particular case, however, requires a fact-specific inquiry, focusing on practical considerations and resting in the first instance within the sound discretion of the trial court. (See *County of San Joaquin v. State Water Resources Control Bd.* (1997) 54 Cal.App.4th 1144, 1152–1153 [63 Cal.Rptr.2d 277].)

permitting carefully circumscribed judicial review of an agency decision to release information in a reverse-CPRA action is a far cry from authorizing the court to undertake CPRA decisionmaking in the first instance.

4. *The Trial Court Properly Denied Marken's Request for a Preliminary Injunction*

a. *Governing law*

■ Marken contends disclosure of the investigation report and the November 26, 2008 letter of reprimand would "constitute an unwarranted invasion of personal privacy" in violation of his state constitutional right to privacy and, as a result, not only are those documents exempt from mandatory disclosure under section 6254, subdivision (c), but also their disclosure is "otherwise prohibited by law" justifying preliminary (and, ultimately, permanent) injunctive relief in this reverse-CPRA lawsuit.[18] There is no doubt Marken, even though a public employee, has a significant privacy interest in the information at issue. (See *BRV, supra,* 143 Cal.App.4th at p. 755; cf. *Long Beach City Employees Assn. v. City of Long Beach* (1986) 41 Cal.3d 937, 951–952 [227 Cal.Rptr. 90, 719 P.2d 660] ["[A] public sector employee, like any other citizen, is born with a constitutional right of privacy. A citizen cannot be said to have waived that right in return for the 'privilege' of public employment, or any other public benefit unless the government demonstrates a compelling need."].)

It is equally clear an " '[i]nvasion of a privacy interest is not a violation of the state constitutional right to privacy if the invasion is justified by a competing interest.' " (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 961 [56 Cal.Rptr.3d 477, 154 P.3d 1003]; see *Hill v. National Collegiate Athletic Assn., supra,* 7 Cal.4th at pp. 39–40 [defining elements of, and defenses to, cause of action for violation of the state constitutional right to privacy and describing necessary balancing of interests involved].) The countervailing interest "need not be constitutionally based. Even nonconstitutional interests can outweigh constitutional privacy interests." (*Jacob B.,* at p. 961.) One such interest, grounded in both the California Constitution and the CPRA, is the "strong public policy supporting transparency in government." (*International Federation, supra,* 42 Cal.4th at p. 331 ["in light of the

---

[18] In *Commission on Peace Officer Standards & Training v. Superior Court, supra,* 42 Cal.4th at page 300, the Supreme Court explained an intrusion on a privacy interest need not rise to the level of an invasion of the constitutional right to privacy to be recognized by a public agency under section 6254, subdivision (c). Whatever the difference in those two standards, however, if the proposed disclosure of the investigation report and the letter of reprimand does not fall within the subdivision (c) exemption, it necessarily does not violate Marken's constitutional right to privacy, and its disclosure is not prohibited.

strong public policy supporting transparency in government, an individual's expectation of privacy in a salary earned in public employment is significantly less than the privacy expectation regarding income earned in the private sector"].)

The scope of section 6254, subdivision (c)'s "unwarranted invasion of personal privacy" limitation on the personnel record exemption to mandatory disclosure under the CPRA was first addressed in a published appellate decision in 1978. (*American Federation, supra*, 80 Cal.App.3d 913.) Considering a request for release of an "audit investigation" of acts of alleged financial irregularities at the University of California at San Francisco, the Court of Appeal looked for guidance to the Supreme Court's decision in *Chronicle Pub. Co. v. Superior Court* (1960) 54 Cal.2d 548 [7 Cal.Rptr. 109, 354 P.2d 637], a case involving the propriety of a protective order restricting discovery of attorney disciplinary records in a private libel action, not disclosure under the CPRA. In that somewhat different context the Supreme Court had held trivial or groundless complaints of wrongdoing against members of the State Bar " ' "are to be considered as highly confidential, and as records to which public policy would forbid the confidence to be violated." ' " (*Chronicle Pub. Co.*, at p. 569.) But the court also held "discovery in a proper case" should be allowed "when the conduct of the attorney merits condemnation even though the expression of condemnation be in minor form, that is, private." (*Id.* at pp. 574–575.) Not only the fact of the private discipline, but also the "information upon which it was based," were appropriately disclosed. (*Id.* at p. 575.)

Based on the *Chronicle Pub.* analysis the appellate court held a proper reconciliation between the right to information embodied in the CPRA and the constitutional right to privacy requires "the recorded complaint be of a substantial nature before public access is permitted." (*American Federation, supra*, 80 Cal.App.3d at p. 918.) "And patently, it is in keeping with the rationale of *Chronicle Pub. Co.* and the express purpose of the [CPRA] that where there is reasonable cause to believe the complaint to be well founded, the right of public access to related public records exists." (*Ibid.*) Applying those criteria following its own in camera review of the audit report, the court held the superior court had abused its discretion in failing to order disclosure of portions of the report concerning accusations that were not found to be without substance or unsupported by evidence. (*American Federation*, at p. 919.)

■ More than 25 years later, in *Bakersfield School Dist., supra*, 118 Cal.App.4th 1041, the appellate court applied the same standard to weigh an individual's privacy rights against the public's right to know of an alleged wrongdoing for purposes of section 6254, subdivision (c). The superior court

had granted in part a newspaper's petition for writ of mandate for access to disciplinary records of a school district employee, finding there was no reasonable cause to believe some of the complaints in the employee's personnel file were well founded but that as to one " 'alleged incident,' " although it had not been found true, " 'that complaint is substantial in nature and . . . there is reasonable cause to believe the complaint is well founded.' " (*Bakersfield School Dist.*, at p. 1044.)[19] The Court of Appeal affirmed, explaining "disclosure of a complaint against a public employee is justified if the complaint is of a substantial nature and there is reasonable cause to believe the complaint or charge of misconduct is well-founded." (118 Cal.App.4th at p. 1044.) The court then held "neither the imposition of discipline nor a finding that the charge is true is a prerequisite to disclosure . . . ." (*Ibid.*) That is, although there is "a strong policy for disclosure of true charges" (*id.* at p. 1046), a court must also order disclosure of records relevant to charges of misconduct that have not been found true by the public agency if the documents "reveal sufficient indicia of reliability to support a reasonable conclusion that the complaint was well founded" (*id.* at p. 1047). In this case, the court concluded "the documents reviewed provide a sufficient basis upon which to reasonably conclude the complaint in question was well founded." (*Ibid.*)

Two years later, in *BRV, supra*, 143 Cal.App.4th 742, the Court of Appeal ordered the release of an investigation report analyzing allegations of misconduct by a school district's superintendent, who also served as the principal of a high school in the district. After receiving the report, which it had commissioned, the district board of education entered into an agreement with the superintendent accepting his resignation in exchange for terms of payment and a promise to keep the report confidential. (*Id.* at p. 747.) The superior court had denied a newspaper's petition for writ of mandate seeking disclosure of the report, even though it tended to exonerate the superintendent. As described by the Court of Appeal, the superior court "found this to be an odd result, but felt constrained by case law not to disclose complaints that were determined not to be credible or to concern serious matters." (*Id.* at p. 749.) The appellate court disagreed, explaining that none of those prior cases had involved a public official in an important and highly visible position. "Here, members of the public were greatly concerned about the behavior of the city's high school superintendent and his governing elected board in responding to their complaints." (*Id.* at p. 759.) The court noted public concern that the district and the superintendent had entered into a " 'sweetheart deal' " and concluded the public's interest in judging how the elected board had treated

---

[19] The documents to be disclosed were redacted to exclude names, addresses and telephone numbers of all persons mentioned other than the employee who was the subject of the complaint. (*Bakersfield School Dist., supra*, 118 Cal.App.4th at p. 1044.) The redaction ordered was not challenged on appeal.

the situation "far outweighed" any privacy interest: "Because of [the superintendent's] position of authority as a public official and the public nature of the allegations, the public's interest in disclosure outweighed [his] interest in preventing disclosure of the [investigation] report." (*Ibid.*) Thus, release of the report was warranted even though the investigator had concluded most of the allegations were not sufficiently reliable and the report exonerated the superintendent of all serious allegations of misconduct except those relating to outbursts of anger. (*Ibid.*)[20]

 b. *The public interest in disclosure of the investigation report and letter of reprimand outweighs Marken's privacy interest*

Marken, the District and Chwe agree *American Federation*, *Bakersfield School Dist.* and *BRV* define the proper balancing test for the section 6254, subdivision (c), personnel file exemption, although they disagree whether the superior court erred when applying those standards to the investigation report and letter of reprimand in this case. Whether reviewed de novo, as we would either a decision ordering disclosure under the CPRA itself (see *CBS, Inc. v. Block, supra*, 42 Cal.3d at pp. 650–651) or a "likelihood of prevailing on the merits" determination that depended on construction of a statute and its application to undisputed facts, or for an abuse of discretion, the normal standard of review on appeal from denial of a preliminary injunction, the superior court's denial of Marken's request for a preliminary injunction must be affirmed.

Marken contends the misconduct at issue in the investigation report and subsequent letter of reprimand was not "substantial," noting the superior court characterized it as "probably on the lowest end of the spectrum" in terms of allegations of sexual harassment. He also argues the documents sought to be released by Chwe are not based on "well-founded information," emphasizing the student whose parent had complained was not interviewed by the investigator and Marken had no opportunity to cross-examine her. These arguments rest on a fundamental misreading of the case law.

■ The court in *American Federation* recognized that not every claim of misconduct is substantial or well founded, and thus not every complaint need be disclosed because of the potential impact of an unjustified accusation on the reputation of an innocent public employee. (*American Federation, supra*, 80 Cal.App.3d at p. 918.) It did not hold, as Marken suggests, that a sustained accusation of misconduct may not be sufficiently "substantial" to warrant disclosure. To the contrary, under *American Federation* and

---

[20] As in *Bakersfield School Dist.*, the documents ordered released were to be redacted to exclude names, addresses and telephone numbers of individuals other than the subject of the report. (*BRV, supra*, 143 Cal.App.4th at p. 760.)

*Chronicle Pub.* upon which it relied, if the complaint has been upheld by the agency involved or discipline imposed, even if only a private reproval, it must be disclosed. (*American Federation*, at p. 919.) Moreover, although disclosure is mandated if there has been a true finding by the agency, even without such a finding, if the information in the agency's files is reliable and, based on that information, the court can determine the complaint is well founded and substantial, it must be disclosed. (*Bakersfield School Dist., supra*, 118 Cal.App.4th at p. 1044.)

Here, following receipt of a complaint of sexual harassment, an independent investigator prepared a report based on interviews, including with Marken, but not the student involved, and what she identified as substantial credible corroborating evidence of certain conduct. Based on that information, the investigator found a number of specifically described acts or comments by Marken "more likely than not did occur."[21] The report did not recommend responsive action, but the District concluded Marken's conduct as described by the investigator violated the District's board policy prohibiting the sexual harassment of students. As disclosed in the letter attached to Chwe's CPRA request, "The District found that Mr. Marken did violate Board Policy 5145.7 [(sexual harassment)] and has taken appropriate action." Marken concedes that action took the form of a written reprimand,[22] although he characterizes the reprimand as "more to instruct him about following proper protocol when dealing with students."

To be sure, Marken may not be a "high profile" public official, as was the school district superintendent involved in *BRV, supra*, 143 Cal.App.4th 742, but the court in *BRV* found that designation relevant only to determine when accusations of misconduct against a public official, even if not well founded, might nonetheless be subject to disclosure. (See *id.* at p. 759.) And it is also true the charges against Marken did not involve allegations of violence or sexual abuse, as was the case in *Bakersfield School Dist., supra*, 118 Cal.App.4th 1041. But Marken occupies a position of trust and responsibility as a classroom teacher, and the public has a legitimate interest in knowing whether and how the District enforces its sexual harassment policy. (Cf. *CBS, Inc. v. Block, supra*, 42 Cal.3d at p. 656 [public interest in "ascertain[ing]

---

[21] As discussed, the investigator did not consider the investigation completed as to all of the allegations ("findings inconclusive") because no interviews were conducted with the student whose mother initiated the complaint or any other students at Santa Monica High School.

[22] The District's board policy prohibiting sexual harassment (board policy 5145.7) provides, "If an employee is found to be in violation of this policy, disciplinary action shall include, at a minimum, a letter of reprimand, which shall be placed in the employee's personnel file. That letter shall not be expunged under any circumstances."

whether the law is being properly applied or carried out in an evenhanded manner" justifies disclosure of personal information sought].)[23]

██ In light of the investigator's factual findings, the District's conclusion based on those findings that Marken had violated its board policy prohibiting the sexual harassment of students and imposition of discipline; the exemption from mandatory disclosure in section 6254, subdivision (c), is inapplicable; and release of the investigation report and disciplinary record (redacted as directed by the superior court) is required under the CPRA. Under governing case law, summarized above, the public's interest in disclosure of this information—the public's right to know—outweighs Marken's privacy interest in shielding the information from disclosure.

### Chwe's Appeal

As discussed, as the person who requested disclosure of the investigation report and disciplinary record, Chwe plainly has a stake in the outcome of this lawsuit. It would appear he should have been joined as a party under Code of Civil Procedure section 389, subdivision (a), either by Marken as the plaintiff in this reverse-CPRA lawsuit or by the court on its own motion. Moreover, although the District has recognized Chwe's right to access the documents at issue and defended that position in the superior court and again on appeal, Chwe has presented a persuasive argument the District may not be adequately representing his interests, beginning with its unauthorized delay in producing the records to permit Marken to file the action and continuing with what Chwe characterizes as its tepid arguments in support of the disclosure of public records mandated by governing case law. Thus, in the absence of joinder, granting an appropriately noticed motion for leave to intervene pursuant to Code of Civil Procedure section 387, subdivision (a) (permissive intervention) or (b) (mandatory intervention), would also seem proper. Nonetheless, we are compelled to dismiss Chwe's appeal from the denial of his ex parte application to intervene and to leave to the superior court to address in the first instance Chwe's right to participate in the lawsuit (assuming our affirmance of the order denying a preliminary injunction does not effectively end the litigation).

A reviewing court lacks jurisdiction on direct appeal in the absence of an appealable order or judgment. (*Walker v. Los Angeles County Metropolitan*

---

[23] Marken's argument his due process rights were violated by the manner in which the investigation was conducted is misplaced. The November 26, 2008 letter of reprimand described the process by which Marken could appeal if he was dissatisfied with the decision to discipline him. It does not appear Marken pursued an administrative appeal or judicial review of the District's actions. (See generally *Vasquez v. Happy Valley Union School Dist.* (2008) 159 Cal.App.4th 969, 980 [72 Cal.Rptr.3d 15] [ordinary mandamus is an appropriate remedy when challenging a school district's discipline of a teacher].) That decision is now final.

*Transportation Authority* (2005) 35 Cal.4th 15, 21 [23 Cal.Rptr.3d 490, 104 P.3d 844]; *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696 [107 Cal.Rptr.2d 149, 23 P.3d 43].) "An order denying a motion to intervene is appealable when it finally and adversely determines the right of the moving party to proceed in the action." (*Noya v. A.W. Coulter Trucking* (2006) 143 Cal.App.4th 838, 841 [49 Cal.Rptr.3d 584]; accord, *Hodge v. Kirkpatrick Development, Inc., supra*, 130 Cal.App.4th at p. 547 ["[a]n order denying a motion for leave to intervene is directly appealable because it finally and adversely determines the moving party's right to proceed in the action"].) Even the denial of an ex parte application for leave to intervene is appealable when the party opposing the intervention filed a response "and the trial court ruled on the merits." (*Noya*, at p. 841.) In the case at bar, however, it appears the trial court denied Chwe's application on March 8, 2011 solely because it had been filed on an ex parte basis, rather than by noticed motion, not on the merits of Chwe's right to intervene in the action. This court does not have jurisdiction to review the denial of that application.

In a supplemental letter brief addressing this issue of appellate jurisdiction submitted at our request, Chwe argues the trial court's ruling was based, at least in part, on the merits of his right to intervene, specifically, its erroneous findings he lacked an interest in the litigation and his application was not timely. Therefore, he contends, denial of the ex parte application is an appealable order under *Noya v. A.W. Coulter Trucking, supra*, 143 Cal.App.4th at page 841 and *Hodge v. Kirkpatrick Development, Inc., supra*, 130 Cal.App.4th at page 547.[24] We disagree with Chwe's interpretation of what occurred.

As Chwe argues, generally a motion for leave to intervene before any substantive hearing on the merits has taken place is timely. (See *Allen v. California Water & Tel. Co.* (1947) 31 Cal.2d 104, 108 [187 P.2d 393] ["it is the general rule that a right to intervene should be asserted within a reasonable time and the intervener must not be guilty of an unreasonable delay after knowledge of the suit"]; cf. *Noya v. A.W. Coulter Trucking, supra*, 143 Cal.App.4th at p. 842 [although no statutory time limit is placed on motions to intervene, trial court did not abuse its discretion in denying as untimely an application to intervene filed after several years of litigation had taken place and a comprehensive settlement agreement reached].) As we understand the record, the trial court did not rule to the contrary. Rather,

---

[24] Chwe also contends the trial court's failure to join him as an indispensable party pursuant to Code of Civil Procedure section 389, subdivision (b), may be raised at any time, even "by the appellate court on its own motion." (*In re Marriage of Ramirez* (2011) 198 Cal.App.4th 336, 345 [132 Cal.Rptr.3d 41].) Accordingly, he asserts we have jurisdiction to reverse the court's denial by implication of his right to be joined as a real party in interest in this action. If Chwe's appeal were otherwise properly before us, we might be able to address this additional argument. But absent some appealable order, we lack jurisdiction to grant any relief to Chwe.

because Chwe had known of the litigation since the hearing on the temporary restraining order four weeks earlier, the court concluded his attempt to intervene on an ex parte basis shortly before the hearing on the request for a preliminary injunction was not timely: "He's been aware of this proceeding having been set for next week. He is now coming in on the eve of the writ petition that's going to be heard in a week from now to try to intervene without giving the other side the opportunity to properly brief this court and oppose. Any delay[] is caused by him on his part, so I'm not going to reward him by summarily granting the ex parte application without proper briefing for the court to properly consider these issues." Later in the same hearing the court repeated it was denying "the intervention on an ex parte" because it believed Chwe had not exercised due diligence in moving to intervene earlier. This was not a ruling on the merits of Chwe's right to intervene, but rather on the propriety of proceeding ex parte.

When arguing during this hearing that his client had been diligent, counsel for Chwe stated "he tried to appear at the first hearing [(while in pro. per.)] and was told he could not submit briefing because it was not on briefing paper." The court responded, "To set the record straight, I don't believe he tried to appear. I knew he was present because he's interested in finding out what's going on with the proceeding. I don't think that there was any attempt by him to appear. But in any event, he couldn't have appeared in an action that didn't involve him anyways."

Chwe insists this was a finding he lacked any interest in the reverse-CPRA action for purposes of determining his right to participate in Marken's lawsuit under Code of Civil Procedure sections 387 and 389, subdivision (a). Again, Chwe reads far too much into the trial court's comments. It appears the trial court was simply observing that, as of the date of the hearing on the temporary restraining order, Chwe was not a party to the action and, as a nonparty, could not have formally "appeared"—the case at that point "didn't involve him." (Cf. *Lohnes v. Astron Computer Products* (2001) 94 Cal.App.4th 1150, 1153 [115 Cal.Rptr.2d 34] [even if party has unconditional right to intervene in action, until a timely petition for leave to intervene is granted, "a party lacks any standing to the action"].) We do not understand the court to have found that Chwe, as the requestor of the public records at issue in Marken's lawsuit, had no interest in the litigation for purposes of joinder or intervention.

Accordingly, Chwe's appeal from the order denying his ex parte application for leave to intervene is dismissed. If the action continues, Chwe may raise in the trial court the issue of both compulsory joinder and intervention.

## DISPOSITION

The order denying the preliminary injunction is affirmed. The appeal from the order denying Michael Chwe's ex parte application for leave to intervene is dismissed. The cause is remanded for further proceedings not inconsistent with this opinion. All parties are to bear their own costs on appeal.

Woods, J., and Zelon, J., concurred.

The petition of appellant Michael Chwe for review by the Supreme Court was denied May 9, 2012, S200500.