Filed 11/19/19

# CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION EIGHT

| | |
|---|---|
| CITY OF LOS ANGELES, | B272169 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS157056) |
| v. | |
| METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA, | |
| Defendant, Cross-defendant and Respondent; | |
| WEST BASIN MUNICIPAL WATER DISTRICT et al., | |
| Interveners and Appellants; | |
| THE SAN DIEGO UNION-TRIBUNE, LLC, | |
| Intervener, Cross-complainant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, James C. Chalfant, Judge. Affirmed as modified.

Michael N. Feuer, City Attorney, Blithe S. Bock, Assistant City Attorney, and Shaun Dabby Jacobs, Deputy City Attorney, for Plaintiff and Appellant.

Richard Doyle, City Attorney (San Jose), Nora Frimann, Assistant City Attorney, and Elisa T. Tolentino, City Attorney, for League of California Cities, California State Association of Counties and California Special District's Association as Amici Curiae on behalf of Plaintiff and Appellant.

Olivarez Madruga Lemieux O'Neill, Steven P. O'Neill and Manuel D. Serpa for Interveners and Appellants.

Law Offices of Kelly Aviles, Kelly A. Aviles; and Jeff Glasser for Intervener, Cross-complainant and Appellant.

Katie Townsend, Bruce D. Brown and Daniel J. Jeon for Reporters Committee for Freedom of the Press and 15 media organizations as Amici Curiae on behalf of Intervener, Cross-complainant and Appellant.

Marcia Scully, Heather Beatty, Heriberto F. Diaz and Bryan M. Otake for Defendant, Cross-defendant and Respondent.

_____

This appeal is from the trial court's award of attorney fees in an action consisting of a petition for writ of mandate and a cross-petition under the California Public Records Act (Gov. Code,[1] § 6250 et seq. (CPRA)). The mandamus petition was brought by the City of Los Angeles Department of Water and Power (DWP) against the Metropolitan Water District (MWD) to prevent MWD from disclosing records of DWP customers to the San Diego Union Tribune (Union). Union intervened and filed a CPRA cross-petition against MWD. Three other water districts[2] (Intervener Utilities) opposed disclosure and intervened in the mandamus proceedings. The trial court denied DWP's petition for writ of mandate and granted Union's CPRA cross-petition, ordering disclosure of the records.

The court awarded Union $25,319 in attorney fees under CPRA against MWD for Union's work on the CPRA cross-petition up until the point where MWD agreed it would produce complete customer names and addresses. For its work opposing the mandamus petition, Union received $136,645.82 in attorney fees under Code of Civil Procedure section 1021.5 "against DWP and Intervener Utilities jointly and severally. As between DWP and Intervener Utilities, the award is apportioned so that DMP is solely responsible for the $40,053 in collusion fees."

DWP and Intervener Utilities appeal, contending Union was not entitled to attorney fees under Code of Civil Procedure

___

[1]    Further undesignated statutory references are to the Government Code.

[2]    The water districts are West Basin Municipal Water District, Foothill Municipal Water District, and Upper San Gabriel Municipal Water District.

3

section 1021.5, both because such attorney fees are not authorized in actions involving CPRA requests and because Union has not satisfied the requirements of section 1021.5.

We conclude Union was eligible for attorney fees under CPRA for work on the CPRA cross-petition and for attorney fees under Code of Civil Procedure section 1021.5 for its work opposing the petition for writ of mandate. (*Pasadena Police Officers Assn. v. City of Pasadena* (2018) 22 Cal.App.5th 147, 159 (*PPOA*).) The trial court did not abuse its discretion in finding Union met the requirements of Code of Civil Procedure section 1021.5 for attorney fees. Union was the prevailing party and its action resulted in the enforcement of an important right affecting the public interest, conferring a significant benefit on the general public. DWP and Intervener Utilities were not exempt from attorney fees on the ground they were the equivalent of an individual who seeks a determination of "only his or her [own] private rights [and] has done nothing to adversely affect the public interest." (See *Adoption of Joshua S.* (2008) 42 Cal.4th 945, 958 (*Joshua S.*).) DWP and Intervener Utilities sought far more than a simple determination of the privacy rights of a few customers.

DWP separately contends the trial court abused its discretion in awarding Union attorney fees on its unsuccessful claim that DWP and MWD colluded to avoid CPRA and to bring the mandamus petition. Compensation is ordinarily warranted even for unsuccessful early claims in a series of attacks on an opponent's case, and so the trial court did not abuse its discretion in finding attorney fees warranted for Union's initial "collusion" claims, particularly since those claims touched on the emerging area of "reverse-CPRA" actions.

4

Union also appeals, contending the trial court abused its discretion in denying it attorney fees for its work preparing separate reply briefs to three separate oppositions to fees filed by MWD, DWP and Intervener Utilities. Union has also filed a "protective" cross-appeal seeking reapportionment of fees in the event we reverse any portion of the trial court's award. Union re-argues its claim that DWP and Intervener Utilities lacked standing to bring a petition for a writ of mandate to prevent disclosure of records (hereafter the reverse-CPRA action). Union also points to numerous problems with allowing reverse-CPRA actions and asks that we hold such actions incompatible with CPRA and so not permissible.

We agree with Union that the trial court abused its discretion in denying fees for Union's work preparing the reply briefs, and we order Union awarded fees for its work as to DWP and Intervener Utilities only. We need not and do not reach the issues in Union's "protective" cross-appeal. We hold DWP and Intervener Utilities had standing. We decline Union's suggestion to find reverse-CPRA actions impermissible as Union cross-appealed only the attorney fees award.

The trial court's order awarding attorney fees against DWP and Intervener Utilities is modified to add $12,350.33 in fees against only those parties jointly and severally. We affirm the trial court's award in all other respects, including all standing determinations.

## FACTUAL BACKGROUND

MWD is a cooperative water wholesaler with 26 members, including DWP and Intervener Utilities. In 2014, following then-Governor Brown's declaration that California was in a drought and lawns and ornamental turf should be replaced with drought

5

tolerant landscapes, MWD began a Turf Removal Rebate Program. MWD provided money or rebates to customers of its member agencies who replaced their grass with drought tolerant landscaping. MWD paid $370 to $450 million in rebates. Each member agency had its own contract with MWD governing the ability of the agency's customers to participate in the program. Some agencies offered a supplemental rebate to their customers and some did not. There were about 40,000 participants in the Turf program, and about 7,800 of them were DWP customers.

The Controller for the City of Los Angeles questioned the utility of turf removal programs and called DWP's program "largely a gimmick – a device intended to attract attention and publicity." The Controller stated MWD's turf program "came at a rather high cost and, arguably at the cost of some fairness." The Controller noted the program's rebates were concentrated in the western San Fernando Valley and beneficiaries included "some affluent households," "some private golf courses," and "[o]ne particular contractor." The Controller suggested DWP release the names and addresses of residents who received rebates, stating that "[b]illing information for customers . . . is different than the person who chooses to ask for an incentive or [rebate] and gets money from ratepayers for that."

On May 19, 2015, a Union reporter made a CPRA request to MWD for information about the participants in the turf program, including their names, addresses, and rebate amounts.

CPRA provides a streamlined and expedited process for public access to government records, because "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (§ 6250.) CPRA provides that "every person has a right to inspect

any public record" (§ 6253, subd. (a)), "[e]xcept with respect to records exempt from disclosure by express provisions of law." (§ 6253, subd. (b).)  An agency has 10 days to respond to a CPRA request.  One 14-day extension is permitted for specified purposes, including consultation with another agency having "substantial interest in the determination of the request." (§ 6253, subd. (c)(3).)  No further delays are authorized by the statute.

If an agency finds disclosure is required or appropriate, the agency may simply provide the records to the requestor.  If an agency withholds records, the agency "shall justify withholding any record by demonstrating that the record in question is exempt under express provisions of this chapter or that on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record."  (§ 6255, subd. (a).)

Had MWD simply denied Union's request, Union then could have filed an action in the superior court to compel disclosure.  (§ 6258.)  That action would have been entitled to scheduling to "secur[e] a decision as to these matters at the earliest possible time."  (*Ibid*.)  Had Union prevailed in such an action (as it did in this case on its cross-petition), Union would have been entitled to reasonable attorney fees (§ 6259, subd. (d)) and expedited handling of any appeal (§ 6259, subd. (c)).

Here, MWD did not comply with the statutory timelines for a disclosure response and did not unequivocally deny the request when it did respond.  Before responding to Union's CPRA request, MWD provided DWP with a copy of the request.  DWP objected to revealing its customers' names and addresses.  Ultimately MWD agreed with DWP to limit disclosure to only

7

generalized block numbers and MWD's share of the rebate amount. On June 29, 2015, MWD released this redacted information to Union. MWD stated that the production "conclude[d] Metropolitan's response to your PRA request." MWD did not provide any justification for its redactions.

On July 7 and 8, 2015, Union objected to the redactions and MWD's failure to provide written justification for them. MWD again conferred with DWP, who continued to object to disclosure of its customers' information.

On July 31, 2015, DWP filed this lawsuit against MWD seeking to enjoin MWD from releasing information about anyone who participated in the turf rebate program, regardless of whether they were DWP customers. Such an action is not specifically authorized by CPRA, but this District Court of Appeal has permitted non-statutory actions to prevent disclosure of records requested under CPRA, that is reverse-CPRA actions. (*Marken v. Santa Monica-Malibu Unified School Dist.* (2012) 202 Cal.App.4th 1250 (*Marken*); see *PPOA, supra*, 22 Cal.App.5th 147.) Such reverse actions have been viewed as necessary to protect the privacy rights of individuals whose personal information may be contained in government records, because CPRA provides no mechanism for notifying such individuals of the requested disclosure and does not specifically authorize actions to prevent disclosure.

On August 6, 2015, Union sought and obtained leave to intervene in the lawsuit between DWP and MWD. At the same time, Union filed a CPRA cross-petition against MWD to compel disclosure of the names and addresses of turf program recipients. At Union's request, the trial court limited its temporary restraining order (TRO), which temporarily prevented disclosure,

8

to DWP customers only. Thereafter Intervener Utilities joined DWP's lawsuit seeking their own TROs.

In opposing DWP's mandamus petition, Union argued MWD and DWP, by suing each other, had colluded to deny Union the opportunity to file a CPRA petition. Union also argued they colluded, by suing each other, to circumvent the judicial bar which prevents public agencies from filing declaratory relief actions under CPRA. (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 432 (*Filarsky*) [an agency may not institute a declaratory relief action to determine its obligation under CPRA to disclose documents to a member of the public].) Union relatedly argued DWP did not have standing to assert the privacy rights of its customers because privacy rights are personal and cannot by asserted by third parties.

On January 15, 2016, the trial court issued its rulings on the petitions. The court rejected Union's collusion arguments and found DWP was the co-custodian of the requested records and a joint venturer with MWD and so had standing to assert the privacy rights of DWP's customers.[3] The court denied DWP's petition for a writ of mandate and granted Union's CPRA cross-petition for disclosure. No party has appealed from these rulings.

---

[3] Although Union believed MWD deliberately delayed its response to facilitate collusion, the trial court found MWD's delayed response was due to "the large number of records requested, the unprecedented number of CPRA requests that came in around the same time as the Union CPRA request, and the technological failings of MWD's Water Efficiency Team."

9

## LEGAL BACKGROUND

This case highlights many of the issues that have emerged from permitting reverse-CPRA actions, like DWP's, to prevent disclosure of public records. The issue most directly implicated in this case, and the only issue we consider on appeal, is the availability of attorney fees in reverse-CPRA actions.

CPRA provides a trial court "shall award court costs and reasonable attorney[] fees" to a requesting party who prevails in an action to compel disclosure. (§ 6259, subd. (d).) In contrast, agencies who prevail in the action and prevent disclosure may only receive attorney fees if the court finds "the requestor's case is clearly frivolous." (*Ibid.*)

While some CPRA exemptions are clear-cut, many require the agency to perform a balancing test to determine if disclosure is required. For example, section 6254.16, which was raised in this case, provides that "Nothing in this chapter shall be construed to require the disclosure of the name, credit history, utility usage data, home address, or telephone number of utility customers of local agencies, except that disclosure . . . shall be made available upon request as follows: [¶] . . . [¶] (f) Upon determination by the local agency that the public interest in disclosure of the information clearly outweighs the public interest in nondisclosure." The situation is more complicated if the CPRA request seeks records containing alleged private information of third parties. In enacting CPRA, the Legislature was "mindful of the right of individuals to privacy" (§ 6250), but provided no mechanism for individuals to enforce that right. An agency which is found to have incorrectly determined that the public interest in nondisclosure is heavier on balance will be required to pay the requesting party's attorney fees.

Not surprisingly, agencies have attempted to avoid liability for CPRA attorney fees. Their attempts to seek judicial declarations of the propriety of nondisclosure were unsuccessful. (*Filarsky, supra*, 28 Cal.4th at p. 432.) The court in *Filarsky,* however, left open the issue of whether other non-statutory actions were permissible in connection with CPRA requests, stating "We . . . have no occasion in the present case to determine whether a third party possesses the right to seek a judicial ruling precluding a public agency from disclosing documents pursuant to the CPRA. (See, e.g. Civ. Code, § 1798.45.) Such an action, known as a 'reverse FOIA' case pursuant to the federal counterpart of the CPRA, has been held to be authorized by a specific federal statute authorizing judicial review of agency actions that adversely affect another person. (5 U.S.C. § 702; *Campaign for Family Farms v. Glickman* (8th Cir. 2000) 200 F.3d 1180, 1184.)" (*Filarsky*, at p. 431.)

Following *Filarsky*, agency notification to third parties of CPRA requests began to result in some of those third parties bringing suit to prevent the agency from disclosing records. This District Court of Appeal formally recognized the viability of this "reverse-CPRA action" in *Marken.* The action recognized in *Marken* was a petition for a writ of mandate brought by an individual teacher, pursuant to Code of Civil Procedure section 1085, to compel the school district to refuse disclosure of the teacher's disciplinary records. (*Marken, supra*, 202 Cal.App.4th at p. 1266.)

The reasoning of *Filarsky* had indicated that a reverse-CPRA action to prevent record disclosure could not invoke the benefits of proceeding under the CPRA statute. (*Filarsky, supra,* 28 Cal.4th at pp. 430–431 [if the limitations of § 6258 "specifying

11

that judicial proceedings conducted pursuant to [CPRA] may be commenced only by a person seeking disclosure of documents" do not apply, there is no "reasoned basis" to apply other provisions of CPRA].)  In discussing the viability of a reverse-CPRA action, the court in *Marken* noted that "CPRA contains expedited procedures for determination by the superior court of the agency's obligation to disclose public records, as well as for appellate review by writ of mandate of that decision.  A court would be under no statutory obligation to schedule briefing and hearings to expedite a final decision in a reverse-CPRA action." (*Marken*, *supra,* 202 Cal.App.4th at p. 1268.)  The court also noted that "a requesting party who participates in a reverse-CPRA lawsuit would not be entitled to the recovery of attorney fees" under section 6259, subdivision (d).  (*Ibid.*)  The court suggested that the party seeking the records could rely on the agency to oppose the reverse-CPRA action and thereby avoid attorney fees.  (*Ibid.*)

While correct, the reasoning of *Marken* concerning attorney fees is limited by its facts.  The requesting party in *Marken* was (improperly) denied leave to intervene, and so the case and appeal did not involve a CPRA cross-petition.  The non-party seeking the records was forced to rely on the school district to oppose the teacher's reverse-CPRA action.

During the pendency of this appeal, this District Court of Appeal considered the issue of attorney fees in a case where the requesting party successfully intervened in and opposed a reverse-CPRA petition for writ of mandate to prohibit disclosure and filed a CPRA cross-petition.  (*PPOA*, *supra,* 22 Cal.App.5th 147.)  The court found the successful requesting party was eligible for CPRA fees on the CPRA cross-petition and Code of Civil Procedure section 1021.5 attorney fees on the reverse-CPRA

12

action.  The court recognized it is not always reasonable for a requesting party to rely on the agency to advocate for disclosure. (*PPOA*, at p. 157.)  We agree with the *PPOA* court's reasoning and conclusions.

## DISCUSSION

### I.     *DWP'S AND INTERVENER UTILITIES' APPEAL*

DWP's and Intervener Utilities' appeal is limited to the amount and propriety of the attorney fees awarded against them pursuant to Code of Civil Procedure section 1021.5.

####     A.     *Code of Civil Procedure Section 1021.5*

Code of Civil Procedure section 1021.5 codifies the "private attorney general" exception to the general rule that parties bear their own attorney fees.  (See Code Civ. Proc., § 1021.)  Code of Civil Procedure section 1021.5 authorizes a trial court to award attorney fees when "(1) the action resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit was conferred on the general public, and (3) the necessity and financial burden of private enforcement make the award appropriate." (*PPOA, supra*, 22 Cal.App.5th at p. 159.)

"On appeal from an award of attorney fees under [Code of Civil Procedure] section 1021.5, ' "the normal standard of review is abuse of discretion.  However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." ' " (*Serrano v. Stefan Merli Plastering Co., Inc.* (2011) 52 Cal.4th 1018, 1025–1026.)

13

DWP's position in its opening brief that attorney fees are never available in a reverse-CPRA action is a question of law. We review the claim de novo and find no error. We find no abuse of discretion in the remainder of the court's Code of Civil Procedure section 1021.5 fee award.

B.     *Attorney Fees Are Available In Reverse-CPRA Actions.*

In its opening brief, DWP contends this appeal is "virtually identical" to *Marken*, and urges us to follow M*arken's* reasoning, holding that attorney fees are never available in reverse-CPRA cases. This case has significant factual differences from *Marken*. In *Marken*, the requestor was denied leave to intervene and so there was no CPRA cross-petition; the writ petition was brought by a single individual and was based on that individual's personal circumstances. (*Marken*, *supra*, 202 Cal.App.4th at pp. 1254–1255.) In this case, the requesting party, Union, did intervene and file a CPRA cross-action; the writ petition was brought by a public agency, DWP, to protect, at a minimum, the records of thousands of customers under a general privacy theory. Further, *Marken's* statement about attorney fees was part of the court's general discussion of the viability of reverse-CPRA actions and so was dicta; no attorney fees were sought in that appeal. (*Id*. at p. 1268.)

More importantly, in April 2018, Division 1 of this court issued its opinion in *PPOA*, explaining that attorney fees are available to an intervening requesting party in reverse-CPRA cases. In its reply brief, DWP argues the facts of *PPOA* are "wholly different" than the facts in this appeal. We disagree. *PPOA* is quite similar factually to this case. Both *PPOA* and this appeal involve records related to a matter of public interest; the *PPOA* reverse-CPRA action was brought by a union representing

14

the interests of its large number of members, and this reverse-CPRA action to prevent disclosure was brought by a public agency, DWP, representing a large number of its customers. That two individuals were also plaintiffs in the *PPOA* reverse-CPRA case is not a reason to reject the reasoning of *PPOA*.[4]

C.    *The Trial Court Did Not Abuse Its Discretion in Finding Union Met the Requirements for Attorney Fees Under Code of Civil Procedure Section 1021.5.*

DWP contends that even if Code of Civil Procedure section 1021.5 fees are permissible in reverse-CPRA actions, Union does not meet the statutory requirements for attorney fees under section 1021.5.

1.    DWP Was Seeking to Restrict the Public's Right to Access Customer Information Even When Such Information Was Relevant to an Issue of Public Interest.

DWP contends it simply enforced the privacy rights of its customers and did not adversely affect the rights of the public. DWP is, in effect, arguing it qualifies for the exception to section 1021.5 attorney fees set forth in *Joshua S., supra,* 42 Cal.4th at page 958 ("section 1021.5 was not intended to impose fees on an individual seeking a judgment that determines only his or her private rights, but who has done nothing to adversely affect the

---

[4]    DWP contends "the *PPOA* petitioners fought to prevent disclosure of the records, here, DWP never contested disclosure of any information about the inner-workings of, or the policies behind, the Turf Rebate Program."  This claim is disingenuous at best.  DWP clearly fought to prevent disclosure of the records containing the customer information sought by Union.

15

public interest other than being on the losing side of an important appellate case").

DWP is not a private business; it is a public agency. DWP contends the trial court "recognized DWP was acting in a representative capacity for its customers and not as a governmental agency." We see no such recognition anywhere in the record. As the trial court found, DWP is a governmental agency seeking to protect records it had obtained acting in its capacity as a governmental entity and which it had shared with another governmental agency as part of its joint venture with that agency to implement state water policy using public funds.

Further, DWP did not bring its reverse-CPRA action to protect the rights of a small number of individual customers. DWP had no idea whether any particular customer objected to disclosure, or whether any customer would maintain a nondisclosure stance if preserving that stance required litigation. DWP took, and could only credibly take, the position that all utility customers had a right to privacy in the information provided to their public water suppliers.[5] Further, DWP itself offered evidence that it had never before disclosed customer name and address information unless an enumerated exception in section 6254.16 was met. In arguing against disclosure, DWP necessarily opposed Union's attempts to "enforce[] an important right affecting the public interest," specifically the public's "right to know how the government uses public money."

---

[5] DWP argues that it was not practical to give its large number of customers notice about the disclosure request. If, by not practical DWP means it would be time-consuming and expensive, we agree.

16

DWP's action, if successful, would have established or expanded the ability of utilities to withhold information from the public and curtailed the public's ability to obtain information on how the DWP, and potentially all public utilities, spends public funds. The expenditure of public funds is a matter of clear public interest. (See *California State University, Fresno Assn., Inc. v. Superior Court* (2001) 90 Cal.App.4th 810, 833–835.) If, as DWP argued, its customers' privacy rights outweighed the public's clear and well-established interest in monitoring the expenditure of public funds, it is difficult to imagine when disclosure of customer information could ever be warranted.[6]

DWP's motives for seeking to block disclosure, good or bad, simply do not matter. "[T]he subjective intent of the party seeking to prevent disclosure is immaterial." (*PPOA, supra*, 22 Cal.App.5th at p. 164.) All that it is required for an award of attorney fees under section 1021.5 is " 'that the party against whom such fees are awarded must have done or failed to do something, in good faith or not, that compromised public rights.' " (*Ibid.*, quoting *Joshua S. supra*, 42 Cal.4th at p. 958.) DWP sought to block the public's access to records necessary to monitor and assess the use and alleged misuse of public funds, and potentially to shield its customer information from disclosure in all circumstances. That is sufficient for purposes of Code of Civil Procedure section 1021.5. (See *PPOA, supra*, 22 Cal.App.5th at p. 164 ["Regardless of the officers' personal motivation in filing a reverse-[CPRA] suit, in so doing, the officers and the PPOA

---

[6] Some of DWP's customers had an enhanced statutory right to privacy which those customers separately raised, and we do not include such rights in this discussion.

17

plainly attempted to restrict the public's right of access to [its records].".)

        2.   Union Was the Prevailing Party on the Disclosure Issue.

DWP contends Code of Civil Procedure section 1021.5 attorney fees were improper because Union was not the prevailing party on its claims against DWP. DWP contends it "did not control the records sought in the CPRA request" and so could not provide the primary relief sought. DWP asserts there was no causal connection between Union's involvement and the disclosure because Union did nothing to influence DWP to change its behavior.

The primary relief sought by Union through its intervention in DWP's writ petition was disclosure of records. The trial court found DWP was a co-custodian of the records and had provided MWD access to the records pursuant to a confidentiality agreement. DWP absolutely did control the records sought. Further, MWD did not oppose disclosure of the records, and if, at any time, DWP had agreed to disclosure, the records would have been disclosed and Union would have received the relief sought. Instead DWP obtained a TRO prohibiting MWD's disclosure of the information Union sought. There is nothing in the record to suggest DWP changed its behavior for any reason other than Union's intervention and successful advocacy in court for disclosure. For this reason, DWP's misplaces its reliance on *Marine Forests Society v. California Coastal Com.* (2008) 160 Cal.App.4th 867 (legislative amendment to statute provided relief sought) and *Westside Community for Independent Living, Inc. v. Obledo* (1983)

18

33 Cal.3d 348 (issuance of final regulation on unaltered timeline provided relief sought).

DWP is correct that Union did not prevail on the collusion and standing claims, but as we discuss in more detail below, that does not disqualify Union as the prevailing party or prevent an award of attorney fees for Union's work on those claims.

### 3. Intervener Utilities Are Not Equivalent to Amici Curiae.

Intervener Utilities adopt DWP's arguments that it was simply trying to advocate for the privacy rights of its customers and it had no control of the records sought by Union. Accordingly, they assert that they cannot be "opposing parties" within the meaning of Code of Civil Procedure section 1021.5. They analogize themselves to amici curiae. They did not make this argument in opposition to the fee motion and so it has been forfeited.

Even if not forfeited, the argument has no merit. As Intervener Utilities acknowledge, an opposing party is a party whose position in the litigation is adverse to that of the prevailing party and who has lost on the merits. (See *Nestande v. Watson* (2003) 111 Cal.App.4th 232, 240–241.) Within two weeks of the trial court's ruling that DWP could only obtain a TRO prohibiting MWD from disclosing the names and addresses of DWP's own customers, the Utilities had actively intervened in the reverse-CPRA action to prevent disclosure. As each utility intervened, the TRO in the case was broadened, at their request, to include the customers of the intervening utility. Intervener Utilities were not merely interested bystanders who filed briefs hoping to ultimately persuade the court to reach a certain decision; they were intervening plaintiffs who actively blocked

19

Union's attempts to obtain their records. Clearly they took a position in the litigation adverse to Union's position, and equally clearly Union was the prevailing party on the disclosure issue.

Intervener Utilities also relatedly argue they did not have a pecuniary or institutional interest in the litigation and so are not subject to attorney fees. Again, they did not make this argument in opposition to the fee motion; it is forfeited. Even if not forfeited, the argument fails in light of the trial court's findings on the merits, which are uncontested on this appeal. The trial court's order allowing Intervener Utilities' standing was based on the court's finding that each member agency of MWD had a contract with MWD governing participation in the Turf program and that MWD acted as a clearinghouse. This made the program a joint venture and the member agencies co-custodians of the records. Intervener Utilities describe themselves on appeal as "one of several custodians of [customer] data." As such, they had a direct interest in the outcome.

If Intervener Utilities' interest was only to provide general advocacy in support of utility customers' privacy rights, they could have relied on DWP to do so without joining the action, perhaps filing amici briefs in support of DWP. (Cf. *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1173–1174 [advocacy group designated real party in interest to argue position which would otherwise have gone unrepresented, but without direct interest in litigation, is not subject to attorney fees award].)

As for the rest of the arguments made by Intervener Utilities, their claims fail for the same reasons as did DWP's claims. We emphasize that Intervener Utilities' motives or reasons for opposing disclosure are simply not material to a Code of Civil Procedure section 1021.5 fee award. It is their active

20

compromise of public rights that matters.  The same would be true if fees were awarded under CPRA:  fees are awarded against agencies who do not prevail in litigation and are ordered by the court to disclose records, regardless of their motive or reason for denying disclosure.

4.   The Ability of the Public to Monitor the Expenditure of Hundreds of Millions of Dollars in Public Funds Is a Significant Public Benefit.

DWP claims that "[g]eneral enforcement of the CPRA is not a significant public benefit."  DWP argues that Union did not publish any stories about the Turf Program and so there was no widespread public benefit from the disclosure.

The trial court found that "Union enforced an important right affecting the public interest," specifically the public's "right to know how the government uses public money."  For this reason, "the disclosure conferred a significant benefit on the public.  Union and others will be able to monitor the Turf Program's alleged success and excesses."

DWP's factual argument about the number of publications does not appear to have been made in the trial court:  it is not mentioned in the trial court's detailed written ruling on attorney fees.  Thus, the argument is forfeited.  Even if this issue were not forfeited, however, the number of articles published in the relatively brief period between a news organization's receipt of records at the conclusion of litigation and the hearing on a motion for attorney fees would be a particularly inappropriate measure of how widespread the public benefit is.  Here, for example, Union sought the records of a large number of customer names and addresses so that it could investigate how public funds were

21

spent.  Only after this time-consuming investigation was complete could reporters be expected to write their stories.

More importantly, the public benefit from disclosure is not the number of articles written using the disclosed records.  The public benefit is the scrutiny of the records by the public.  Even when a particular disclosure does not reveal newsworthy wrongdoing, the requirement to disclose reinforces the agency's awareness that its actions are open to scrutiny.  "Openness in government is essential to the functioning of a democracy.  'Implicit in the democratic process is the notion that government should be accountable for its actions.  In order to verify accountability, individuals must have access to government files.  Such access permits checks against the arbitrary exercise of official power and secrecy in the political process.' " (*International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 328–329.)

> ### D.  DWP Is Not Entitled to a Reduction in the Fee Award for Work Union Performed on Its Unsuccessful "Collusion" Claims.

DWP contends the trial court abused its discretion in awarding attorney fees for the work Union performed on its "collusion" claims.  The trial court found "Union was entitled to make its collusion allegation and take discovery, even if it did not bear fruit."  The court ordered DWP to be solely responsible for the collusion fees.

As the trial court recognized, the party seeking attorney fees need not prevail on all its alleged claims to qualify for an award.  (*Harbor v. Deukmejian* (1987) 43 Cal.3d 1078, 1103.)  The successful party under section 1021.5 is the party that succeeds

on " ' "any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." ' " (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1292.)

A prevailing party who qualifies for an award under Code of Civil Procedure section 1021.5 is entitled to compensation for all hours reasonably spent by its counsel. (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 632–633 (*Serrano*).) This includes fees for proceedings " 'intertwined inextricably' " with the litigation. (*Wallace v. Consumers Cooperative of Berkeley, Inc.* (1985) 170 Cal.App.3d 836, 848.) There is no requirement that each motion or opposition be successful to be reasonable. (*Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 685.) "Litigation often involves a succession of attacks upon an opponent's case; indeed the final ground of resolution may only become clear after a series of unsuccessful attacks. Compensation is ordinarily warranted even for unsuccessful forays." (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1303.)

The trial court did not abuse its discretion in finding Union was entitled to explore the circumstances under which DWP brought a writ and became actively involved in Union's request for MWD records. Union did not request records from DWP, and it appears that the records sought were physically in the possession of MWD. DWP's basis for objecting to the disclosure of records which it had previously disclosed to MWD was not clear at the outset of the litigation. Further, DWP is a public agency, yet it claimed it was not acting as an agency but was simply standing in the shoes of its customers and representing their privacy interests — an unusual position to say the least. Privacy rights are personal and generally may not be asserted by anyone

23

other than the person whose rights are at risk. At the same time, a public agency's ability to seek judicial review of a CPRA request is limited. It was and remains an open question whether a public agency may bring a writ against another agency over disclosure of records requested under CPRA. Had Union succeeded on its collusion and standing arguments, the case would have been resolved without the need for further litigation. Further, although the trial court did not adopt Union's positions on standing and collusion, the court's ruling did clarify the status of DWP in this lawsuit, which assisted Union's further litigation of the case.

## II. UNION'S APPEAL AND CROSS-APPEAL

Union appeals from the trial court's denial of attorney fees for its work on reply briefs to Intervener Utilities' oppositions to Union's fee motion. Union does not otherwise object to the trial court's fee award. Union has filed a "protective" cross-appeal seeking reapportionment of fees if part of its fee award is reversed on appeal. In doing so, Union attempts to raise the issue of DWP's and Intervener Utilities' standing to bring the reverse-CPRA action. We question whether it may do so without appealing from the trial court's substantive ruling on that issue, but assuming the standing challenge is properly before this court, we would find it without merit. Further, the standing claim does not open the door for us to consider generally whether the problems created by reverse-CPRA actions mandate elimination of such actions.

### A. Union Was Entitled to Attorney Fees for Its Work on the Separate Reply Briefs.

Intervener Utilities, DWP and MWD each filed its own individual opposition to Union's fee motion, and Union filed

24

individual reply briefs to each opposition.  Union sought $18,525.50 in fees for its work on those replies.  The court declined the request, but did not give a reason for the its denial.

We can discern no reason from the record before us.  Generally, the lodestar figure for an attorney fees award is calculated by multiplying the hours reasonably worked by a reasonable hourly rate.  (*Serrano*, *supra*, 32 Cal.3d at p. 639.)  "The lodestar figure may then be adjusted, based on consideration of factors specific to the case . . . .  [Citation.]  Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary."  (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)  "[A]bsent circumstances rendering an award unjust, the fee should ordinarily include compensation for all hours reasonably spent, including those relating solely to the fee."  (*Serrano,* at p. 624.)  Here, the trial court found Union's attorney's hourly rate reasonable.  The court did not make any finding that Union's attorney expended too many hours on any legal work.  Thus, the lodestar figure for the reply brief work was $18,525.50.  The trial court did not identify any factor or circumstance to support its fee reduction for that work to zero.

Intervener Utilities posit that the trial court denied the reply brief fees because the reply briefs were submitted one day late and the footnotes did not use the proper font.  While it is true the reply briefs were filed late and with improper footnote fonts, the trial court expressly stated that it exercised its discretion and considered the replies.  There in nothing in the trial court's written ruling on the fee motion which suggests that these

25

irregularities were the basis for the trial court's denial of all hours expended on the reply briefs.

We have reviewed the three reply briefs.[7] While there were common or overlapping issues applicable to more than one opposition, the parties also made arguments specific to their situation. It was reasonable for Union to address these unique arguments in separate reply briefs. Thus, one brief replies to MWD's opposition and addresses MWD's unique position as the respondent in the CPRA cross-petition. A second brief replies to Intervener Utilities' arguments that as late intervening parties who were not involved in the collusion issues, they should not be responsible for fees incurred before they intervened or involving the collusion issues.[8] The third reply brief responds to public policy arguments made by DWP.

At the same time, Union did not duplicate work. For example, Union addressed the requirements of Code of Civil Procedure section 1021.5 in the DWP reply brief and addressed the reasonableness of the hourly rate and number of hours in Intervener Utilities' reply brief, and then incorporated those arguments by reference into the other reply briefs. In fact, Union began each brief by noting that the opposition briefs "filed by the

_____

[7]     We previously granted Union's July 8, 2019 motion to augment the record with these briefs.

[8]     The trial court's written decision considered and rejected Intervener Utilities' argument that they could not be responsible for fees incurred by Union before Intervener Utilities joined the case. The court also noted Intervener Utilities would have benefited from any collusion between MWD and DWP, although the court ultimately apportioned the collusion-related fees solely to DWP.

other parties raise many of the same arguments in opposition to the Union-Tribune's fee motion, even incorporating arguments made by the other parties, [and so] the arguments set forth in the Union-Tribune's two additional reply briefs . . . are incorporated herein."

On the record before us, we see no circumstances or findings supporting a reduction of the fee award for work on the reply briefs.  Accordingly, we reverse the denial of attorney fees for work on the reply briefs.  We order an additional $12,350.33 in attorney fees added to the award against DWP and Intervener Utilities.[9]  We do not order fees awarded for work on the MWD reply brief, as Union expressly agreed that the existing award against MWD was reasonable.

B.  *Union's Fact-Dependent Claims That DWP and Intervener Utilities Lacked Standing to Bring the Reverse-CPRA Action Are Not Cognizable on This Appeal.*

Union repeats several arguments it raised in the trial court:  DWP and Intervener Utilities had no standing to assert the privacy rights of third parties; if DWP and Intervener Utilities co-owned the records with MWD, they lacked standing to sue MWD because a member of a legislative body has no standing to sue its parent body; and if DWP and the Intervener Agencies had co-control over the records, they were public agencies who lacked standing to seek a court determination of their duty to disclose those records.

---

[9]  The briefs are of equal length and equal complexity. Accordingly, we apportion the fees equally among the parties.

We recognize it is well settled that " 'contentions based on a lack of standing involve jurisdictional challenges and may be raised at any time in the proceeding.' " (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 233; *Rialto Citizens for Responsible Growth v. City of Rialto* (2012) 208 Cal.App.4th 899, 912 [standing may be raised for the first time on appeal].) However, this general rule is not helpful under the factual circumstances of this appeal. Here, Union is not raising the issue of standing for the first time on appeal. Union devoted a substantial amount of effort to the issue of standing in the trial court. Union lost after the trial court made factual determinations of disputed evidence and found DWP and the Intervener Utilities had standing based on those facts. Union did not appeal from the trial court's substantive rulings in this case. We do not believe the general rule that standing may be raised at any time was intended to apply to parties who lose on standing in the trial court, fail to appeal from that ruling, and then attempt to raise the same fact-dependent arguments in an appeal from a post-judgment order awarding attorney fees. Accordingly, we find Union's standing argument is not cognizable on this appeal.

C. *Union's Claim That Reverse-CPRA Actions Cause Problems Which This Court Should Now Remedy Is Not Cognizable on This Appeal.*

Union urges us to recognize the problems caused by reverse-CPRA actions and to "remedy" the issue. We certainly recognize reverse-CPRA actions to prevent disclosure have created problems for requesting parties, but Union did not appeal from the trial court's rulings permitting such actions. Thus, the issue is not before us on appeal.

28

Union contends it may contest the viability of a reverse-CPRA action because it may contest DWP's and Intervener Utilities' standing at any point. As we explained above, we do not believe Union may raise an issue decided by the trial court without appealing from that decision. Even if we were to treat this standing claim as a pure legal issue which was not squarely before the trial court, we would see no basis to find DWP, Intervener Utilities, or any person or entity seeking to stop disclosure of the private information of individuals lacks standing to bring an action to prevent disclosure. In enacting CPRA, the Legislature was "mindful of the right of individuals to privacy" (§ 6250), but provided no mechanism for individuals to enforce those rights. Thus, CPRA itself does not clearly forbid actions outside CPRA to prevent disclosures alleged to violate privacy rights.

Current law does not clearly limit reverse-CPRA actions to requests which involve the alleged private information of individuals. Different considerations may be involved in reverse-CPRA actions not based on the protection of privacy rights. We are not faced with such an action however, and we express no opinion on the viability of such actions.

**DISPOSITION**

We modify the attorney fees award against City of Los Angeles Department of Water and Power and the Intervener Utilities (West Basin Municipal Water District, Foothill Municipal Water District, and Upper San Gabriel Municipal Water District) to add $12,350.33 for a total of $148,996.15. We affirm the court's order awarding attorney fees in all other respects. DWP and Intervener Utilities shall pay Union's costs on appeal.

**CERTIFIED FOR PUBLICATION**


STRATTON, J.

We concur:


GRIMES, Acting P. J.


WILEY, J.

30