Filed 1/13/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CONSTANCE ILOH, | |
| Plaintiff and Appellant, | G060856 |
| v. | (Super. Ct. No. 30-2021-01197536) |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, | O P I N I O N |
| Defendant and Respondent; | |
| THE CENTER FOR SCIENTIFIC INTEGRITY, INC., | |
| Real Party in Interest and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Richard J. Oberholzer, Judge.* Affirmed.

Tabah Law and Elvin I. Tabah for Plaintiff and Appellant.

*Retired Judge of the Kern Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Michael R. Goldstein for Defendant and Respondent.

Law Offices of Kelly Aviles, Kelly Aviles and Shaila Nathu for Real Party in Interest and Respondent.

*     *     *

An assistant professor at a public university submitted four articles on topics in her field of study to various academic journals unaffiliated with her university. All four of those articles were later either retracted or corrected by the journals, at least in part due to inaccurate references or text overlap from uncited sources. Soon after that, the professor left her position at the university.

A third party investigating the article retractions sent the university a request under the California Public Records Act (CPRA) (Gov. Code,[1] § 7920.000 et seq.) seeking certain postpublication communications between the professor, the university, and the journals regarding the retracted articles. The university determined the requested documents were subject to disclosure; the professor disagreed, filed a petition for writ of mandate, and sought a preliminary injunction to prevent disclosure.

The trial court denied the professor's motion for preliminary injunction, concluding she had not met her burden of establishing a likelihood of prevailing on the merits. Finding no abuse of discretion, we affirm. As explained below, the requested communications qualify as public records under the CPRA, and the professor did not establish the records are otherwise exempt from disclosure.

## FACTS

Constance Iloh has a Ph.D. in Urban Education Policy. She was employed at the University of California, Irvine (UCI) from 2015 to 2021, first as a postdoctoral fellow, and then as an assistant professor in UCI's School of Education. According to

---

[1] All further undesignated statutory references are to the Government Code.

Iloh, her job duties as assistant professor included giving class lectures and conducting education-related research.

During her time as a UCI professor, Iloh published multiple research articles on education in a variety of academic journals. At issue here are four such articles published in journals unaffiliated with UCI: (1) *Paving effective community college pathways by recognizing the Latino post-traditional student* (2018) in the Journal of Latinos and Education; (2) *Not non-traditional, the new normal: adult learners and the role of student affairs in supporting older college students* (2017-2018) in Colorado State University's Journal of Student Affairs; (3) *Toward a new model of college 'choice' for a Twenty-First-Century context* (2018) in the Harvard Educational Review; and (4) *Does distance education go the distance for adult learners? Evidence from a qualitative study at an American community college* (2018) in the Journal of Adult and Continuing Education.

The articles all dealt with topics in Iloh's field of study at UCI (education), and Iloh used her UCI e-mail address to communicate with the journals about her article submissions. However, Iloh submitted the articles on her own behalf, not on behalf of UCI; the articles were not part of any study paid for by UCI; the articles did not contain UCI's imprimatur; and UCI had no ownership interest in the articles.

After the articles were published, an anonymous source reportedly e-mailed the four journals and demanded the articles be retracted. As a result, all four articles were either retracted or corrected by the journals in which they were published: the Journal of Latinos and Education retracted Iloh's article in full; the Journal of Student Affairs removed Iloh's article and the entire issue in which it was published; the Harvard Educational Review issued an errata statement; and the Journal of Adult and Continuing Education issued a correction. Again, in communicating with the journals about the retractions, Iloh used her UCI e-mail address.

3

Although it is not entirely clear from the record, it appears the retractions occurred due to concerns about possible plagiarism or inaccurate citation references in Iloh's articles.[2] For example, the Journal of Latinos and Education's retraction explained Iloh's article "contain[ed] a substantial amount of text overlap with [various] sources, which were either inaccurately referenced or not referenced within the article." Similarly, the Harvard Educational Review's errata statement cited "multiple instances in which the author incompletely attributed previously published material in the introduction and literature review." And the Journal of Adult and Continuing Education's correction explained that "[s]ections throughout the original manuscript have been rewritten and updated and this manuscript also includes new references."

The retractions caught the attention of Retraction Watch, an editorially independent organization that maintains a database of article retractions in scientific journals, covers incidents of particular note, and reports on academic publishing, transparency, and accountability. Retraction Watch is published by the Center for Scientific Integrity (CSI), a nonprofit public benefit corporation whose mission is "to promote transparency and integrity in science and scientific publishing, and to disseminate best practices and increase efficiency in science."

In August 2020, Retraction Watch published an article about Iloh's papers; the article reported the papers had been "retracted and corrected, for plagiarism and misuse of references." The following month, to further its investigation, Retraction Watch sent a CPRA records request to UCI seeking all correspondence from January 2019 onward (1) between UCI and Iloh regarding articles published in the four journals, and (2) between UCI or Iloh and the four journals regarding articles authored by Iloh.

---

[2]     We have not reviewed the contested records because they are not part of our record. Nothing in this opinion should be construed to suggest we find that Iloh actually committed plagiarism or otherwise violated university policy.

UCI notified Iloh of the CPRA request and its intent to disclose the responsive records. Iloh responded that the requested records fell outside the scope of the CPRA and argued the request violated her privacy rights. UCI agreed to remove a few records from its production, but maintained it would disclose the remaining records absent a court order.

In April 2021, Iloh filed a verified petition against UCI and the Regents of the University of California (the Regents) for writ of mandate, declaratory relief, and injunctive relief to prevent disclosure. She did not name CSI as a real party in interest. Iloh also filed an ex parte application for a temporary restraining order enjoining UCI and the Regents from disclosing the records until her petition could be heard.

The Regents filed a statement of nonopposition to Iloh's ex parte application; it advised that the campus's privacy officer had determined certain records were responsive and nonexempt, but the Regents would nevertheless refrain from releasing the records until the trial court adjudicated Iloh's application. The Regents also requested an order requiring Iloh to give notice of the proceedings to CSI.

In light of the Regents' stipulation not to release the records, the trial court denied Iloh's application for a temporary restraining order, set a hearing date for a motion for preliminary injunction, and ordered Iloh to serve any motion for preliminary injunction on CSI.

Shortly thereafter, Iloh apparently left her position at UCI. In July 2021, Iloh filed an amended petition naming CSI as a real party in interest and removing UCI as a respondent. She then filed a motion for preliminary injunction enjoining the Regents from disclosing the requested records to CSI. Iloh argued the requested correspondence was not subject to disclosure because it was not a "public record" under the CPRA, and in any event the correspondence was exempt from disclosure under the CPRA's catchall exemption and the exemption for personnel files. (We discuss these statutory provisions in greater detail below.) Iloh also asserted that academic freedom is important to her and

5

other professors, their academic work would be stifled if they were concerned that informal communications would be made broadly available, and the production of her correspondence would reduce her willingness to work for public institutions in the future.

The Regents again filed a statement of nonopposition. CSI opposed the motion, asserting the requested records are "public records" under the CPRA, Iloh has no reasonable expectation of privacy in the records, and any diminished privacy right is outweighed by the public's interest in understanding how a publicly funded university like UCI responds to complaints of plagiarism and academic dishonesty.

After hearing oral argument, the trial court denied Iloh's motion for preliminary injunction, finding Iloh had not established a likelihood of prevailing on the merits because she had not shown the requested records are not "public records" under the CPRA, nor had she established the records are otherwise exempt from disclosure. Iloh appeals from that order. (See Code Civ. Proc., § 904.1, subd. (a)(6) [order denying an injunction is appealable].)

## DISCUSSION

1.  *Guiding Principles*

"'As its name suggests, a preliminary injunction is an order that is sought by a plaintiff prior to a full adjudication of the merits of [her] claim. [Citation.] To obtain a preliminary injunction, a plaintiff ordinarily is required to present evidence of the irreparable injury or interim harm that [she] will suffer if an injunction is not issued pending an adjudication of the merits.' [Citation.] 'In deciding whether to issue a preliminary injunction, a trial court weighs two interrelated factors: the likelihood the moving party ultimately will prevail on the merits, and the relative interim harm to the parties from the issuance or nonissuance of the injunction.'" (*Marken v. Santa Monica-Malibu Unified School Dist.* (2012) 202 Cal.App.4th 1250, 1260 (*Marken*), italics omitted.)

6

The ruling on a motion for preliminary injunction generally rests in the sound discretion of the trial court and will not be disturbed on appeal absent a showing of abuse. (*Association of Orange County Deputy Sheriffs v. County of Orange* (2013) 217 Cal.App.4th 29, 49.) "'Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566), or when the court's ruling "is 'so irrational or arbitrary that no reasonable person could agree with it'" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773).[3]

In this case, we must determine whether the trial court abused its discretion in determining Iloh had not established a likelihood of prevailing on the merits of her petition to prevent disclosure under the CPRA. Before addressing that question, we review the relevant provisions of the CPRA, previously codified as section 6250 et seq. and recently recodified and reorganized as section 7920.000 et seq.

"The [C]PRA, enacted in 1968, grants access to public records held by state and local agencies. [Citation.] Modeled after the federal Freedom of Information Act (5 U.S.C. § 552 et seq.), the [C]PRA was enacted for the purpose of increasing freedom of information by giving members of the public access to records in the possession of state and local agencies. [Citation.] Such 'access to information concerning the conduct of the people's business,' the Legislature declared, 'is a fundamental and necessary right of every person in this state.'" (*Los Angeles County Bd. of Supervisors v. Superior Court* (2016) 2 Cal.5th 282, 290; see § 7921.000; see also Cal. Const., art. 1, § 3,

---

[3]  "'[I]f the "likelihood of prevailing on the merits" factor depends upon the construction of a statute or another question of law, rather than evidence to be introduced at trial, our review of that issue is independent or de novo.'" (*Amgen Inc. v. California Correctional Health Care Services* (2020) 47 Cal.App.5th 716, 731 (*Amgen*).) Here, however, because the issues raised by Iloh on appeal largely involve factual questions (e.g., whether the records relate to the public's business), our review is for abuse of discretion.

subd. (b)(1) ["The people have the right of access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny"].)

Consistent with that fundamental right of access to information, the CPRA dictates that "every person has [the] right to inspect any public record," except those records expressly exempted from disclosure. (§ 7922.525, subd. (a).) The CPRA broadly defines "'public records'" to include "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency." (§ 7920.530, subd. (a).) Our Constitution requires that these provisions furthering the people's right of access to information be "broadly construed." (Cal. Const., art. 1, § 3, subd. (b)(2); see *Essick v. County of Sonoma* (2022) 80 Cal.App.5th 562, 570.)

"Nevertheless, the act does not confer an absolute right of access. As part of the CPRA, the Legislature included a provision declaring it was 'mindful of the right of individuals to privacy.' [Citation.] This express policy declaration "'bespeaks legislative concern for individual privacy as well as disclosure."'" (*Becerra v. Superior Court* (2020) 44 Cal.App.5th 897, 913; see § 7921.000.)

To balance those competing goals of privacy and public access, the CPRA includes numerous exemptions that permit public agencies to refuse disclosure of certain public records. For example, section 7927.700 exempts from disclosure any "personnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy." Additionally, a catchall exemption permits a public agency to withhold records if it can demonstrate "on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." (§ 7922.000.)

Our Constitution requires that these exemptions be narrowly construed. (Cal. Const., art. I, § 3, subd. (b)(2); see *International Federation of Professional &*

*Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 329.) "Moreover, the exemptions from disclosure provided by [the CPRA] are permissive, not mandatory:  They allow nondisclosure but do not prohibit disclosure." (*Marken, supra,* 202 Cal.App.4th at p. 1262.)  Thus, "a government agency has the discretion to invoke an exemption under [the CPRA], but is not required to do so." (*Amgen, supra,* 47 Cal.App.5th at p. 732.)

Although the CPRA includes a statutory procedure for a party requesting disclosure to challenge an agency's refusal to disclose a public record (see § 7923.000 et seq.), no comparable procedure exists for an interested third party to *prevent* the public agency from disclosing public records.  (*Marken*, *supra*, 202 Cal.App.4th at p. 1267.) "'Therefore, third parties must bring an independent action for declaratory relief or traditional mandamus if they believe they will be adversely affected by disclosure." [Citation.]  This type of mandamus action is commonly called a 'reverse-CPRA action.'" (*Amgen, supra,* 47 Cal.App.5th at p. 732.)  "[A] party bringing a reverse-CPRA action must show disclosure is '"otherwise prohibited by law,"' that is, that the government agency *lacks* discretion to disclose." (*Ibid*.)

2.       *The Requested Records Are Public Records*

Applying those authorities here, we first must determine whether the requested records are public records subject to disclosure under the CPRA.  As noted, unless an exemption applies, the CPRA requires disclosure of any "public record," which the act defines as "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency." (§ 7920.530, subd. (a).)  The parties do not dispute that UCI, as a public university, qualifies as a state agency.  Further, the requested correspondence was sent and received using UCI e-mail addresses and therefore is "owned, used, or retained" by a state

9

agency.[4]  The controlling question, therefore, is whether the requested documents "contain[] information relating to the conduct of the *public's business*" within the meaning of the CPRA.  (*Ibid.*, italics added.)[5]

"Resolution of . . . [whether a writing concerns the public's business] will often involve an examination of several factors, including the content itself; the context in, or purpose for which, it was written; the audience to whom it was directed; and whether the writing was prepared by an employee acting or purporting to act within the scope of his or her employment."  (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 618.)  "Communications that are primarily personal, containing no more than incidental mentions of agency business, generally will not constitute public records." (*Id.* at pp. 618-619.)

Broadly construing section 7920.530 as our Constitution requires (see Cal. Const., art. I, § 3, subd. (b)(2)), we conclude the trial court did not abuse its discretion in

---

[4]  UCI's Guidelines for the UC Electronic Communications Policy, available at https://www.policies.uci.edu/policies/procs/800-15.php [as of January 9, 2023], archived at: <https://perma.cc/9KTG-C7LS>, confirm that "UCI email addresses . . . are considered public records under the California Public Records Act and may be published unless access is restricted under applicable law (e.g. Federal Family Educational Rights and Privacy Act of 1974)."

[5]  Citing *Franklin v. Benevolent etc. Order of Elks* (1979) 97 Cal.App.3d 915, a case concerning the actual malice element of libel claims, Iloh argues that the CPRA does not apply because she is not a "public official."  This argument reflects a fundamental misunderstanding of the CPRA's scope.  The CPRA is not limited to writings by public officials.  The controlling question is whether the request seeks the "public records" of a state or local agency.  (§ 7920.530, subd. (a).)  Although a person's status as a public official (and resulting reduced expectation of privacy) might be relevant in the CPRA context when evaluating whether an exemption applies (see, e.g., *BRV, Inc. v. Superior Court* (2006) 143 Cal.App.4th 742, 758 [considering school superintendent's status as public official in weighing various interests under the CPRA's catchall exemption]), it is not relevant to the threshold question of whether the requested documents qualify as public records under the CPRA.

10

finding the requested communications are public records. The articles at issue did not concern personal matters unrelated to Iloh's job as an assistant professor; they discussed topics directly relevant to her field of study at UCI's School of Education, and they were published in journals devoted to that same field of study. Although the requested communications are not before us, we can reasonably infer from the record that at least some of those communications concern whether Iloh committed plagiarism or otherwise violated university policies on academic integrity—an issue tied to the use of public funds. (Cf. *California State University Fresno Assn., Inc. v. Superior Court* (2001) 90 Cal.App.4th 810, 825 [public university's documents revealing purchasers of suites in multipurpose arena being built on university's campus were public records because the arena was financed in part by public funds].)

In sum, the postpublication communications by a professor at a public university regarding articles she authored on topics in her field of study at the university involve the "public's business." Accordingly, the trial court did not abuse its discretion in finding the requested records qualify as public records under the CPRA.

3.      *The Catchall Exemption*

That brings us to whether the requested documents are otherwise exempt from disclosure. On this issue, Iloh primarily invokes the CPRA's catchall exemption, which permits a public agency to withhold records if "on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." (§ 7922.000.)

The catchall exemption's balancing test is highly fact dependent and is applied "'on a case-by-case basis.'" (*Humane Society of U.S. v. Superior Court* (2013) 214 Cal.App.4th 1233, 1255 (*Humane Society*) [discussing former § 6255, recently renumbered as § 7922.000].) "The burden of proof as to the application of [the] exemption is on the proponent of nondisclosure," who "must establish a 'clear overbalance' on the side of nondisclosure." (*Ibid.*)

11

CSI identifies several public interests supporting disclosure: (1) public funds are used both to pay UCI assistant professors like Iloh and also to investigate alleged academic dishonesty, (2) academic research culminating in publication is central to UCI's public function and within Iloh's job duties, and (3) the public has an interest in understanding how UCI addresses allegations of academic dishonesty. We agree. There is a strong public interest in knowing how a public university funded largely by taxpayer dollars handles and resolves quality or integrity problems in its professors' publications. (Cf. *Marken, supra*, 202 Cal.App.4th at p. 1275 ["the public has legitimate interest in knowing whether and how [a school district] enforces its sexual harassment policy" against high school teacher].)

Iloh counters that those interests are outweighed by the public interest in protecting academic freedom. According to Iloh, disclosure of her e-mails would stifle her research, create an intolerable danger to the freedom of intellect and academic expression, and discourage teachers and academics from seeking employment with public institutions.

We believe Iloh's concerns about academic freedom are legitimate. We can imagine how allowing unrestricted access to a university professor's research files could hamper the academic process. Our colleagues in the Third District concluded that the disclosure of *prepublication* communications about a university study on the effects of a proposed voter initiative "would fundamentally impair the academic research process" and have a "chilling effect" on academics (*Humane Society, supra*, 214 Cal.App.4th at p. 1263); the court therefore found that the public interests in nondisclosure outweighed the public interests in disclosure of those prepublication records (*id.*at p. 1275).[6]

---

[6]    The California Legislature is undoubtedly aware of these concerns. However, unlike public records acts in various other jurisdictions, the "CPRA does not have an express exemption for general academic research." (*Humane Society, supra,*

But such concerns do not apply to this case. The articles at issue here were published in 2017 and 2018, and the CPRA request only seeks correspondence from January 2019 onward. Thus, the requested documents would not reveal Iloh's *prepublication* research, article drafts, work product, or communications.

For the catchall exemption to apply, Iloh must establish "a 'clear overbalance' on the side of nondisclosure." (*Humane Society, supra,* 214 Cal.App.4th at p. 1255.) Considering the notable public interests supporting disclosure described above, and narrowly construing the exemption as we must (Cal. Const., art. I, § 3, subd. (b)(2)), we conclude Iloh did not meet that burden.

We are not suggesting the public has or should have carte blanch access to a university professor's research files, work product, or correspondence. As noted, the application of the catchall provision is by design fact dependent. (See *American Civil Liberties Union Foundation v. Deukmejian* (1982) 32 Cal.3d 440, 454, fn. 14 [because the catchall exemption's balance test is fact specific, a court's decision on disclosure "is necessarily limited to the facts of th[at] particular case"].) In some instances, the facts may compel disclosure, while in other instances, academic research "*may* be protected [from disclosure], depending on the facts of [the] case." (*Humane Society, supra,* 214 Cal.App.4th at p. 1265.) We find that in this particular case, based on this record, Iloh did not meet her burden of establishing "a 'clear overbalance' on the side of nondisclosure." (*See id.* at p. 1255.)

---

214 Cal.App.4th at pp. 1254-1255; contrast Del. Code Ann. tit. 29, § 10002(l); Ind. Code § 5-14-3-4(a)(6); Me. Rev. Stat. Ann. tit. 1, § 402(3-E).) Several years ago, the Legislature considered adding to the CPRA an exemption for public postsecondary educational institutions' research records, but that bill died in early 2020. (Assem. Bill No. 700 (2019-2020 Reg. Sess.); see also *Humane Society, supra,* 214 Cal.App.4th at p. 1262 [clarifying that its decision did "not create an academic researcher's exemption immunizing disclosure of university documents in future cases"].)

4.  *The Personnel Files Exemption*

Iloh alternatively argues certain portions of the requested records are exempt from disclosure under section 7927.700, which exempts "personnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy."

This exemption was """"developed to protect intimate details of personal and family life, not business judgments and relationships."""" (*Bakersfield City School Dist. v. Superior Court* (2004) 118 Cal.App.4th 1041, 1045 [discussing former § 6254, subd. (c), renumbered as § 7927.700].)  In determining whether the exemption applies, we weigh the public's interest in disclosure against protection of privacy interests, determining first whether disclosure would compromise substantial (as opposed to de minimis) privacy interests, and then deciding whether the potential harm to those privacy interests outweighs the public interest in disclosure.  (*Caldecott v. Superior Court* (2015) 243 Cal.App.4th 212, 220–221; see, e.g., *Associated Chino Teachers v. Chino Valley Unified School Dist.* (2018) 30 Cal.App.5th 530, 539-543 [concluding two letters regarding results of school district's investigation of volleyball coach were exempt from disclosure because of potential harm to coach's privacy interests].)

Applying those standards to this case, and keeping in mind that the CPRA's exemptions must be narrowly construed, we conclude the trial court did not abuse its discretion in finding the personnel files exemption inapplicable here.  First, it is not clear that the CPRA request encompasses UCI's personnel file on Iloh; the request asks for "correspondence," not personnel records.  Second, to the extent copies of any of the responsive communications were placed in Iloh's personnel file (something we cannot determine from the record), we conclude the public interest in disclosure of those communications outweighs any privacy concerns for the same reasons articulated above. (See *Marken, supra*, 202 Cal.App.4th at pp. 1275-1276 [public's interest in knowing whether and how a school district enforced its sexual harassment policy against a high

14

school teacher outweighed the teacher's privacy interest in shielding the information from disclosure, so the personnel file exemption did not apply].)

5. *The Trial Court's Order*

Finally, Iloh contends the trial court abused its discretion because its minute order denying her motion cited case law from traditional CPRA actions rather than reverse-CPRA actions, and because the court did not discuss many cases cited in Iloh's motion for preliminary injunction. We cannot agree.

Iloh is correct that an abuse of discretion occurs if a trial court applies the wrong legal standard. (*Riskin v. Downtown Los Angeles Property Owners Assn.* (2022) 76 Cal.App.5th 438, 446.) Here, however, the court's minute order denying Iloh's motion recited the correct test for granting or denying a preliminary injunction, and then applied the correct test for evaluating CPRA requests. And in any event, we consider only the trial court's ruling, not its reasoning; we affirm a challenged order if it is correct on any theory. (*Young v. California Fish & Game Com.* (2018) 24 Cal.App.5th 1178, 1192-1193; *Muller v. Fresno Community Hospital & Medical Center* (2009) 172 Cal.App.4th 887, 906-907.)

The relevant question, therefore, is not whether the court cited the correct legal authorities in its minute order, but whether the court's denial of the motion for preliminary injunction was an abuse of discretion. For the reasons explained above, we find it was not.

## DISPOSITION

The order denying Iloh's motion for preliminary injunction is affirmed. CSI shall recover its costs on appeal.


GOETHALS, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


MOTOIKE, J.